**TELEDYNE INDUSTRIES, INC., d/b/a Teledyne Still–Man, Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

Nos. 90–6021, 90–6102.

United States Court of Appeals, Sixth Circuit.

Argued April 30, 1991.

Decided June 11, 1991.

William Alexander Blue, Jr., Larry W. Bridgesmith (argued), Constangy, Brooks & Smith, Nashville, Tenn., Alan L. Rolnick, Constangy, Brooks & Smith, Atlanta, Ga., for petitioner cross-respondent.

**628**

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Frederick Havard (argued), Eric G. Moskowitz, N.L.R.B., Office of the General Counsel, Washington, D.C., Martin M. Arlook, Director, N.L.R.B., Atlanta, Ga., for respondent cross-petitioner.

Before NELSON and NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This is a petition by Teledyne for review of a decision and order of the National Labor Relations Board finding that Teledyne violated Section 8(a)(1) and (3) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a)(1) and (3). The Board has filed a cross-application for enforcement. The Decision and Order of the Board appear at 298 NLRB No. 148 (1990).

There is no dispute about the operative facts. On February 1, 1984, employees of the Cookeville, Tennessee plant of Teledyne began an economic strike, during which Teledyne notified the strikers that it intended to hire permanent replacements. By September 5, 1984, all strikers had been permanently replaced and on that date Teledyne established a rehire priority list on which it placed the names of strikers as they offered unconditionally to return to work. On April 4, 1985, the unit employees voted to decertify their union and immediately thereafter the union informed Teledyne that the strike was over. All picketing activities ended on that date.

On April 7, 1985, the union called a membership meeting to distribute to those present a copy of a union-prepared letter that the strikers could individually send to Teledyne if they desired to make unconditional offers to return to work. The union did not mail copies of the letter to its membership or make an offer to Teledyne on behalf of all striking employees to return to work. As job vacancies have become available, Teledyne has recalled, chronologically, qualified employees from the list of strikers who have offered unconditionally to return to work to fill the vacancies.

During April 1985 approximately 154 names were added to the rehire list and after April 1985 the names of 14 other individuals were added to the list. Beginning in October 1985 and thereafter at six month intervals Teledyne sent letters to everyone on the rehire list, including the charging parties, asking them to notify the employer of their continuing interest in employment with Teledyne by returning a form indicating their desire to remain on the rehire list and updating their addresses and telephone numbers. Each of the charging parties has responded to every inquiry, indicating a continuing desire to be reinstated.

The charging parties are four employees who made unconditional offers to return to work more than six months after the end of the strike. Teledyne added the names of the charging parties to the list, but noted next to these names (and names of other individuals who made unconditional offers to return to work after October 8, 1985) that the names were added to the list more than six months after the strike ended.

Although Teledyne has placed the charging parties' names on the rehire list and requested that they update their status on the list, Teledyne's personnel director testified that Teledyne does not intend to consider any employee for reinstatement who made an unconditional offer to return to work more than six months after the strike ended. There was no evidence that Teledyne informed the charging parties or other individuals who made offers more than six months after the end of the strike of this determination. The administrative law judge (ALJ) to whom the complaint was referred for hearing found that there was no evidence showing that the charging parties, either personally or through a representative, ever indicated that they had abandoned all interest in continuing their employment with Teledyne.

Although it did not agree with all of the ALJ's findings and conclusions, the Board did agree that the charging parties' failure initially to make unconditional offers to return to work within six months after the end of the strike did not justify Teledyne's

refusal to consider the charging parties for reinstatement. Thus, the Board found Teledyne in violation of the Act and entered an order for Teledyne to cease and desist from refusing to consider the charging parties for reinstatement because of their failure to make unconditional offers to return to work within six months of the day the strike ended. The order also directed Teledyne to consider the charging parties for reinstatement and to remove from its rehire priority list any language that creates an impediment to considering these employees for reinstatement.

■ We find no error in the Board's decision or in its order. Economic strikers remain employees and, upon making unconditional offers to return to work, are entitled to be reinstated when vacancies occur for which they are qualified. *N.L.R.B. v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614 (1967). An employer who refuses to reinstate such employees is guilty of violating § 8(a)(1) and (3) unless he can show a "legitimate and substantial business justification" for so refusing. The burden of proving justification is on the employer. *Id.*

Here, the Board found that Teledyne failed to carry its burden. In its briefs, Teledyne complains about the administrative problems of maintaining personnel files indefinitely on strikers who may never return to work. This is a specious argument. Only fourteen employees, including the four charging parties, made offers to return after the six month deadline that Teledyne unilaterally established. On the other hand, more than 150 employees made offers within six months, and at the time of the hearing, many of them had not been reinstated because vacancies had not occurred for which they were qualified. Teledyne must maintain the records on this larger group, and we agree with the Board that requiring it to maintain files on the charging parties does not add significantly to this "burden."

Teledyne cites cases in which employees failed to respond to an employer's requests for indications of a continuing interest in returning to work. Such decisions have no application to the present case. Teledyne has continued to request confirmations from the charging parties, along with all others on the rehire list, and the charging parties have responded each time, telling Teledyne that they continue to desire reinstatement. This is not a case where former strikers have left their employer in doubt with respect to their desire to return.

The Board has the "duty to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." *N.L.R.B. v. Great Dane Trailers, Inc.*, 388 U.S. 26, 33–34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967). In view of Teledyne's failure to prove any substantial business justifications for its arbitrary decision to deny reinstatement to employees properly on its rehire list, the Board's conclusion that the employees' right to reinstatement outweighs Teledyne's administrative convenience is supported by substantial evidence on the record as a whole.

The Board did not hold that timeliness is never a consideration in determining a claim of right to reinstatement, as argued by Teledyne. To the contrary, the Board wrote that "although prolonged delay in making an unconditional offer to return is a factor to be considered in determining whether a striker is no longer interested in working for the formerly struck employer, it will rarely if ever be determinative." The record demonstrates no basis for relying on a failure to offer to return during the six months following the end of a strike as conclusive evidence that a striker has abandoned his right to reinstatement.

■ Teledyne also asserts that the Board is inconsistent in requiring unfair labor practice strikers to make timely offers to return while refusing to set a time limit for offers by economic strikers. The situations are not analogous. An unfair labor practice striker is entitled to immediate reinstatement, even if it requires the employer to discharge a permanent replacement. That is obviously disruptive, and should be accomplished as soon as it is reasonable to expect a decision from the striker. On the other hand, an economic

striker must wait for a vacancy and his reinstatement does not entail the discharge of a replacement and the consequent disruption in business operations. Moreover, the Board has never established an arbitrary deadline for unfair labor practice strikers to make offers to return in order to be entitled to reinstatement.

We have considered Teledyne's remaining arguments and find them to have no merit. Accordingly, the petition for review is denied and the cross-application for enforcement is granted.