**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**M. A. HARRISON MANUFACTURING COMPANY, INC., Respondent.**

**Nos. 81–1652, 81–1355.**

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1982.

Decided June 30, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, Richard Rosenblatt, N. L. R. B., Washington, D. C., for petitioner.

Eldred A. Gentry, James E. Gentry, Gentry & Gentry, Cleveland, Ohio, for respondent.

Before MERRITT and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

### ORDER

The NLRB was granted permission to consolidate two petitions for enforcement of its orders against the M. A. Harrison Manufacturing Company. In the first case, 253 N.L.R.B. No. 97 (1980), the Board found that the Company, in violation of section 8(a)(5) of the National Labor Relations Act, had refused to bargain in good faith with representatives of a newly certified employees union and had sought to undermine the Union by unilaterally changing the terms of employment. In the second case, 256 N.L. R.B. No. 71 (1981), the Board found that the Company, in violation of section 8(a)(1) of the Act, threatened and coerced striking employees, and in violation of 8(a)(5), refused to recognize and bargain with the union without a good faith belief of its minority status. The Board ordered the Company to end its unfair labor practices; to recognize and bargain with the union; to reinstate employees who had gone on strike to protest unfair labor practices; and to rescind the unilateral benefits it had conferred on employees so as to undermine the union. The question before us is whether the Board's findings and conclusions underlying these orders are supported by substantial evidence on the record taken as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Board found that: (1) the Company selectively granted raises to about 15% of the employees without any prior consultation with the certified union, even though collective bargaining sessions had begun; (2) the Company unilaterally granted wage

increases and a new holiday while refusing to bargain in good faith; and (3) directly solicited employee views on a company insurance plan, thus bypassing the union. As a result, the Company succeeded in undermining the union, which called a strike to protest unfair trade labor practices. While the strike was in progress several incidents occurred in which the Company threatened and abused striking employees. For instance, on July 6, 1979, at about 3:00 A.M., Supervisor Bobby Taylor emerged from the Company premises and approached two cars in which two employees on picket duty were sleeping, began to beat on the door and windows of Darlene Carrender's car and apparently shouted threats and epithets. Finally, after the strike ended, Company President Harrison accused an employee who had supported the strike of damaging the plant, and threatened retaliation. On September 18, 1979, the Company filed a representation petition with the Board alleging that the union had lost its majority status because a majority of the employees had recently signed a decertification petition. The Board dismissed the Company's petition because of its outstanding unfair labor practices charges then pending against the Company. Upon reviewing the record, we find that these findings are supported by substantial evidence.

■ Once a Union has been certified, an employer must recognize it as his employees' exclusive collective bargaining agent, and refrain from direct bargaining with the employees themselves. See Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 683–84, 64 S.Ct. 830, 832–33, 88 L.Ed. 1007 (1944). A Company may not bypass this statutory duty and thereby risk undermining the union unless the union waives agreement on a particular issue or unless there is a legitimate bargaining impasse. See NLRB v. Katz, 369 U.S. 736, 743–48, 82 S.Ct. 1107, 1111–14, 8 L.Ed.2d 230 (1962). No plausible argument can be made here that the Union "waived" its right to bargain on the issues of wage increases, holidays, or insurance plans. These subjects were not the subject of collective bargaining before the Company submitted its uni-

lateral decisions on the matters. Waiver of the Union's statutory rights requires "clear relinquishment" of the right, see Timken Roller Bearing Co. v. NLRB, 325 F.2d 746 (6th Cir. 1963); here the union did not even have the opportunity to bargain on the issues, let alone clearly waive its interest in the matters.

■ Nor can it be argued that there was a legitimate bargaining impasse which permitted the Company to implement its own job schemes. Before there can be an "impasse" there must be good faith bargaining on both sides. In this case, although the Company did participate either directly or through a mediator in approximately eleven collective bargaining attempts, there is evidence from which the Board could reasonably conclude that the Company was "giving the Union a runaround while purporting to be meeting with the Union for the purpose of collective bargaining." NLRB v. Athens Mfg. Co., 161 F.2d 8 (5th Cir. 1947).

There is substantial evidence on the record taken as a whole that the union engaged in unfair labor practices in violation of sections 8(a)(5) and (1) of the Act, and that the strike called by the union on January 14, 1979, was in response to the employer's unfair practices. The actions of Supervisor Bobby Taylor in threatening striking employees and in damaging their property was in interference with the rights of union members under the Act. Taylor was a supervisor and was at work during the times of the alleged harassment. The Company did not seek to sanction or penalize Taylor in any way.

A decertification petition was circulated and signed by a majority of the employees in September 1979, after the strikers had capitulated and agreed to mediation between the union and the Company. In October 1979, the Company refused to bargain with the union arguing that it had lost majority support on the basis of the decertification petition. The Board ruled that because of the Company's history of unfair labor practices, it could not rely on the decertification petition, and had to continue

to recognize and bargain with the duly certified union. As the Supreme Court held in *Medo Corp. v. NLRB*, 321 U.S. 678, 687, 64 S.Ct. 830, 835, 88 L.Ed. 1007 (1942):

Petitioner cannot, as justification for its refusal to bargain with the union, set up the defection of union members which it had induced by unfair labor practices, even though the result was that the union no longer had the support of a majority. It cannot thus, by its own action, disestablish the union as the bargaining representative of the employees, previously designated as such of their own free will.

The record indicates that the findings upon which the Board based its legal conclusions are supported by substantial evidence. Accordingly, the orders of the NLRB must be enforced.