**NATIONAL LABOR RELATIONS BOARD, Petitioner, Cross–Respondent,**

v.

**C.J.R. TRANSFER, INC. and C.J. Rogers Transfer, Inc., Respondents, Cross–Petitioners.**

Nos. 90–5879, 90–5913.

United States Court of Appeals, Sixth Circuit.

Argued May 21, 1991.

Decided June 25, 1991.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Joseph Oertel (argued), N.L. R.B., Washington, D.C., Bernard Gottfried, Regional Director, N.L.R.B. Region 7, Detroit, Mich., for petitioner, cross-respondent.

E.R. Whinham, Ann Arbor, Mich., Michael J. Solner, Robert J. Solner (argued), Birmingham, Mich., for respondent, cross-petitioners.

Before GUY and RYAN, Circuit Judges, and JOINER, Senior District Judge.[*]

RYAN, Circuit Judge.

C.J.R. Transfer, Inc., appeals a National Labor Relations Board ("NLRB" or "the Board") order directing C.J.R. to cease unfair labor practices, to compensate employees harmed by unfair labor practices, and to bargain with Teamsters[1] Local No. 247. The issues on appeal are as follows: 1) whether the NLRB regional director foreclosed the possibility of a free and fair representation election by allowing one of the competing unions to withdraw its name from the ballot; 2) whether substantial evidence supports the Board's finding that a majority of the members of the bargaining unit signed cards; 3) whether the Board properly applied the law in issuing a *Gissel*[2] bargaining order; and 4) whether the Board applied the correct burden of proof in reaching its determination that C.J.R. dismissed an employee in retaliation for his union-related activities.

Having concluded that the Board properly allowed the competing union to withdraw its name from the ballot, and that the Board applied the correct law to fact findings based upon substantial evidence, we affirm.

---

[*] The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO.

[2] *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

## I.

C.J.R. bargained with Teamsters Local No. 332 concerning the terms of employment of a group of C.J.R. truck drivers operating out of a Melvindale, Michigan, trucking terminal. Teamsters Local No. 247 undertook an organizational campaign among these truck drivers, a majority of whom eventually signed authorization cards designating Local No. 247 as the drivers' bargaining representative. In response to a petition submitted by Local No. 247, the NLRB regional director ordered a representation election, and initially planned to include both Local No. 332 and Local No. 247 on the ballot. Later, Local No. 332 disclaimed by letter any interest in the election, and the regional director consequently withdrew Local No. 332's name from the ballot.

The election produced eight votes for Local No. 247, thirteen votes for no union, and four challenged ballots. Local No. 247 filed unfair labor practices charges and objections to the employer's conduct during the representation election. After a hearing, the administrative law judge (ALJ) concluded that C.J.R. had committed numerous unfair labor practices, in violation of the National Labor Relations Act ("NLRA" or "the Act"), as amended, 29 U.S.C. § 151 *et seq.*

The unfair labor practices, committed by C.J.R.'s highest ranking officials, included repeatedly promising rewards and threatening punishments in order to influence the drivers' votes in the representation election, in violation of section 8(a)(1) of the Act. According to the ALJ, C.J.R. also moved the trucking terminal from Melvindale to Flint, Michigan, for the purpose of punishing the drivers' for associating with Local No. 247 representatives, in violation of sections 8(a)(1) and (3) of the Act. Finally, the ALJ concluded that C.J.R. discharged employee David Wandoff in retaliation for his protected union-related activities, in violation of sections 8(a)(1) and (3) of the Act.

The ALJ ordered C.J.R. to desist from its unfair labor practices, to offer reinstatement and backpay to Wandoff, and to make the drivers whole for the monetary and time costs they incurred as a result of the transfer to Flint. Most significantly the ALJ ordered C.J.R., upon request, to bargain with Local No. 247. The ALJ made this *Gissel* bargaining order effective as of the date C.J.R. commenced its unfair labor practices by moving the trucking terminal to Flint.

C.J.R. sought review of the ALJ's decision by the NLRB. The Board adopted the ALJ's recommended order in all respects, except that the Board changed the effective date of the bargaining order to the date on which Local No. 332 disclaimed interest in the election. C.J.R. now seeks judicial review of the Board's decision, and the Board cross-appeals for enforcement of its order.

## II.

We uphold the Board's findings of fact where substantial evidence in the record supports the findings. *See, e.g., NLRB v. Fry Foods, Inc.,* 609 F.2d 267, 271 (6th Cir.1979); *NLRB v. Baja's Place,* 733 F.2d 416, 422 (6th Cir.1984). We also review the Board's application of the law to the facts under the substantial evidence standard. *E.g., Turnbull Cone Baking Co. v. NLRB,* 778 F.2d 292, 295 (6th Cir. 1985) (citing *NLRB v. United Ins. Co.,* 390 U.S. 254, 260, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968)). However, we review questions of law *de novo* and will not enforce a Board order having "no reasonable basis in law." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *Wilson v. NLRB,* 920 F.2d 1282, 1285 (6th Cir.1990), *petition for cert. filed,* February 28, 1991.

### A.

First, C.J.R. contends that the regional director foreclosed the possibility of a fair representation election by allowing Local No. 332 to remove its name from the ballot. According to C.J.R., Local No. 332's withdrawal from the representation election was "limited" and not "unequivocal." C.J.R. also asserts that Local No.

332 withdrew for the strategic purpose of avoiding a split vote between itself and the other Teamsters local, because a split-vote might have resulted in no union representation at all.

Local No. 332's president wrote the Board as follows:

I am writing in response to our telephone conversation on this date pertaining to the petition withdrawal for Local 332 on C.J.R. Transfer Inc.

Teamsters Local Union 332, by virtue of this letter, wishes to declare we are disclaiming interest in the decision and direction of the N.L.R.B. Petition for [the] election. . . .

We agree with the ALJ and the Board that Local No. 332's letter clearly disclaimed all interest in the election. Moreover, Local No. 332's alleged motive for doing so in no way negates the letter's effectiveness. As the Board explained:

Local 332 disclaimed interest in representing the unit employees and asked that its name be removed from the ballot. The Regional Director had little choice but to grant the request. A union cannot be compelled to represent employees against its wishes; a fortiori, it cannot be forced to compete with another union for the representation of employees it chooses not to represent.

Accordingly, we conclude that the regional director's removal of Local No. 332's name from the ballot did not defeat the goal of a fair election.

### B.

■ Second, C.J.R. contends that the record will not support a finding that Local No. 247 achieved majority status among the drivers. In C.J.R.'s view, the Board's decision to change the effective date of the bargaining order from the date on which Local No. 247 achieved majority status to the date on which Local No. 332 withdrew "necessarily establishes that a majority status for Teamsters Local 247 was never established by Teamsters Local 247 acquiring authorization cards."

The ALJ examined the authorization cards and found them to be valid, and the

Board upheld the ALJ's decision. From our perspective, the Board's reasons for changing the effective date of the bargaining order are immaterial; whatever the Board's reasons, the change in the effective date cannot alter the reality that Local No. 247 once enjoyed majority status as reflected by valid signature cards. We conclude that substantial evidence supports the Board's finding that Local No. 247 possessed majority status prior to C.J.R.'s unfair labor practices.

### C.

Third, C.J.R. contends that the Board improperly issued a *Gissel* bargaining order in response to the corporation's unfair labor practices.

■ The Board has the authority to direct an employer to bargain with a union despite the union's failure to win a representation election. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 610, 89 S.Ct. 1918, 1938, 23 L.Ed.2d 547 (1969). A *Gissel* bargaining order is appropriate if 1) a majority of employees have signed valid authorization cards designating the union as the employees' collective bargaining representative, and 2) the employer's persistent unfair labor practices have undermined the union's majority strength and impeded the election process. *Id.* at 614, 89 S.Ct. at 1940; *see M.P.C. Plating, Inc. v. NLRB*, 912 F.2d 883, 888 (6th Cir.1990). According to C.J.R., the Board issued its bargaining order without adequately considering the severe financial hardship that C.J.R. allegedly would suffer if obliged to bargain with Local No. 247. C.J.R. asserts that "a threatened strike by Teamsters Local No. 247 presented realistic probabilities of dire consequences," and that consequently C.J.R.'s actions resulted not from union animus but from "the most fundamental of all motives: self preservation." As C.J.R. admits, the ALJ and Board took these factors into consideration in reaching their determination; however, C.J.R. now complains that the Board's treatment was merely "cursory."

While the goal of economic self-preservation certainly is not inherently reprehensible, C.J.R. chose to pursue this alleged end by attempting to dissuade the drivers from choosing Local No. 247 as their collective bargaining representative. In our view, anti-union animus is no less anti-union animus simply because it springs from serious economic considerations. Indeed, we suspect that in the majority of cases where employers commit unfair labor practices and thereby impede the election process, the employers break the law primarily out of concern for their economic welfare. Accordingly, we conclude that C.J.R.'s contention that the Board acted improperly by failing to delve deeply enough into the corporation's economic motives lacks merit.

C.J.R. also complains that the ALJ and the Board did not articulate any reasons why remedies less drastic than a *Gissel* bargaining order would not prove effective. However, in finding a *Gissel* bargaining order necessary, the ALJ explicitly relied upon the following considerations: 1) C.J.R. transferred the drivers to the Flint terminal "in order to undermine Local 247's organizing efforts at great inconvenience and cost to the employees," and threatened that the transfer would be permanent if Local No. 247 won the election, 2) C.J.R. unlawfully discharged Wandoff, a "leading union adherent, ... during the union campaign, just prior to the election," 3) C.J.R. coercively interrogated employees, solicited and promised to remedy grievances, asserted C.J.R. would never bargain with Local No. 247, and threatened employees with discharge and other retaliation due to their union activities, 4) C.J.R. committed its violations through "members of the family who owned the business and were its officers, and who were in a position to carry through on their threats and promises,"

and 5) C.J.R.'s violations adversely affected all or virtually all of the drivers.

In light of these considerations, the ALJ found, and the Board agreed, that "the possibility of erasing the effects of [C.J.R.]'s unfair labor practices and of conducting a fair rerun election by the use of traditional remedies is slight.... [T]he employees' representation desires ... expressed through authorization cards would ... be protected better by the issuance of a bargaining order than by traditional remedies."

Accordingly, we conclude that the ALJ and the Board articulated factors tending to show that C.J.R.'s pervasive unfair labor practices had "the tendency to undermine majority strength and impede the election process" and therefore warranted imposition of the bargaining order. *See Gissel*, 395 U.S. at 610–14, 89 S.Ct. at 1938–40; *see also Coil–ACC, Inc. v. NLRB*, 712 F.2d 1074, 1077 (6th Cir.1983); *M.P.C. Plating*, 912 F.2d at 888.

### D.

Fourth, C.J.R. contends that in reaching their conclusion that C.J.R. discharged employee Wandoff in retaliation for protected union activity, the ALJ and the Board applied an erroneous burden of proof. *Cf.* 29 U.S.C. § 158(a)(3). The record reveals that after reviewing the testimony of both Local No. 247's and C.J.R.'s witnesses, the ALJ and Board properly applied the *"Wright Line test"* [3] approved in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 399–403, 103 S.Ct. 2469, 2473–75, 76 L.Ed.2d 667 (1983), and *Baja's Place*, 733 F.2d at 421.

Accordingly, we conclude that C.J.R.'s assertion that the ALJ and the Board improperly allocated the burden of proof lacks merit.

---

**3.** *Wright Line, A Division of Wright Line, Inc.*, 251 NLRB 1083 (1980), *enforced* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). Under the *Wright Line* framework, the NLRB's general counsel bears the initial burden of making "a prima facie showing sufficient to support the inference that [the employee's] protected conduct was a motivating factor in the employer's decision." *Baja's Place*, 733 F.2d at 421 (citation omitted). Once the general counsel makes this *prima facie* showing, the employer must "rebut the prima facie case by showing that the discharge would have occurred absent the protected activity." *Id.; see also NLRB v. Aquatech, Inc.*, 926 F.2d 538, 545 (6th Cir.1991).

### III.

For the foregoing reasons, C.J.R.'s application for judicial review is DENIED, and the Board's application for enforcement of its order is GRANTED.