**COLUMBIA PORTLAND CEMENT COMPANY, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 91–6130, 91–6244.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1992.

Decided Nov. 17, 1992.

Thomas H. May (argued and briefed), Dickie, McCamey & Chilcote, Pittsburgh, Pa., for petitioner/cross-respondent.

Aileen A. Armstrong, Deputy Associate General Counsel, Howard E. Perlstein (briefed), Marilyn O'Rourke (argued), N.L.R.B., Office of the General Counsel, Washington, D.C., Frederick Calatrello, Director, N.L.R.B., Region 8, Cleveland, Ohio, for respondent/cross-petitioner.

Before: MARTIN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner, Columbia Portland Cement Company, seeks review of a decision of the National Labor Relations Board (the "Board") finding the petitioner to have violated section 8(a)(5) and (1) of the National Labor Relations Act (the "Act") by refusing to reinstate employees who participated in a protected strike, withdrawing recognition from the Union, and making unilateral changes in wages and benefits. The Board has filed a cross-application for enforcement of its order.

I.

Petitioner, Columbia Portland Cement Company (the "Company"), operates a limestone shale quarry and cement production facility in Zanesville, Ohio. Since at least September 1, 1984, Local Lodge D24 of the Cement, Lime, Gypsum & Allied Workers Division of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Help-

ers, AFL–CIO (the "Union"), has represented the Company's employees. The most recent collective-bargaining contract between the Union and the Company's predecessor expired on May 1, 1984, but the predecessor company and the Union agreed to extend that contract during negotiations for a new contract.

The Company purchased the facility from the predecessor on August 28, 1984. The Company notified the Union on August 29, 1984, that it intended to terminate the extended contract and desired to negotiate a new one. The parties failed to reach agreement on a new contract, however, and on October 28, 1984, the Company unilaterally implemented the last offer it had made. On May 8, 1985, the employees went out on strike.

An action was subsequently filed against the Company. On May 31, 1989, the Board determined that the Company had violated section 8(a)(3) and (1), and 8(a)(5) and (1), of the Act. The Board further found that the strike was an unfair labor practice strike. The Board ordered the Company: to cease and desist from committing unfair labor practices; to offer reinstatement to all employees unlawfully discharged; and, to remedy other violations of the Act. This court enforced all relevant parts of the Board's order on October 2, 1990. *Columbia Portland Cement Co. v. NLRB*, 915 F.2d 253 (6th Cir.1990).

By letter dated April 29, 1987, the Union made an offer to return to work on behalf of the striking employees. The letter stated that the employees "unconditionally offer to return to work immediately." In response, the Company sent a letter dated May 7, 1987, informing the Union that, "with regard to [the] unconditional offer to return to work," the Company would not reinstate the striking employees. The Company contended that some of the employees had been lawfully terminated, and that the remainder were permanently replaced economic strikers who would be kept on a list for future vacancies.

On April 20, 1988, the Company offered reinstatement, without backpay, to 62 of the striking employees; 33 eventually returned to work.

On July 12, 1988, the Company withdrew the Union's recognition. It based its withdrawal on: (1) a petition signed by over fifty percent of the bargaining unit indicating that they did not wish to be represented by the Union; (2) lack of contact with Union representatives and no identification of Union officials; and, (3) a high rate of employee turnover with no evidence of Union support by employees hired since the strike.

By letter dated July 27, 1988, the Union disputed the validity of the employee petition and stated that it remained the representative of the bargaining unit employees.

On September 21, 1988, the Company granted all bargaining unit employees a wage increase of 20 cents per hour, terminated its existing retirement plan, and established a 401(k) plan. It gave the Union no prior notice of the changes and announced them directly to unit employees.

On April 27, 1989, the Board's Regional Director issued an amended consolidated complaint and notice of hearing alleging unfair labor practices arising from the foregoing events. On July 25, 1991, the Board determined that the Company had violated section 8(a)(3) and (1), and section 8(a)(5) and (1), of the Act by refusing to reinstate all the striking employees, and by withdrawing recognition from the Union. Furthermore, the Board found that the Company had violated the Act by unilaterally changing benefits and working conditions, and by dealing directly with bargaining unit employees.

The Board ordered the Company to: cease and desist from the unfair labor practices; make the striking employees whole for any loss they might have suffered because of the Company's unlawful refusal to reinstate them; and, bargain in good faith with the Union and rescind all unilateral changes.

The Company then filed a petition to review the Board's order, and the Board filed a cross-application for enforcement of its order.

## II.

■ Petitioner first contends that the Board erred in concluding that the Union, on behalf of its members, unconditionally offered to return to work. Therefore, the Company argues, it did not violate section 8(a)(5) and (1) of the Act by refusing to reinstate the strikers. We do not agree.

■ "A strike which is caused in whole or in part by an employer's unfair labor practices is an unfair labor practice strike." *Lapham–Hickey Steel Corp. v. NLRB*, 904 F.2d 1180, 1187 (7th Cir.1990). Employees who go out on strike in response to an employer's unfair labor practices may not be permanently replaced by other employees. Unfair labor practice strikers are entitled to immediate reinstatement by the employer upon their unconditional offer to return to work. *Philip Carey Mfg. Co. v. NLRB*, 331 F.2d 720, 729 (6th Cir.) (citing *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956)), *cert. denied*, 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed.2d 92 (1964). Refusing to reinstate striking employees after their unconditional offer to return to work violates section 8(a)(3) and (1) of the Act.[1]

■ The issue of whether the strikers' offer to return to work was "unconditional" is a factual issue to be determined by the Board. *Kellogg Co. v. NLRB*, 457 F.2d 519, 526 (6th Cir.), *cert. denied*, 409 U.S. 850, 93 S.Ct. 58, 34 L.Ed.2d 92 (1972). "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record as a whole shall be conclusive," and may not be reviewed by this court. 29 U.S.C. § 160(e); *Kellogg*, 457 F.2d at 526. Furthermore, where "undisputed facts relied on by the Board are open to conflicting inferences," the court may not draw an inference different from the Board even though it may seem more reasonable to do so. *Bally Case & Cooler,*

*Inc. v. NLRB*, 416 F.2d 902, 906 (6th Cir. 1969), *cert. denied*, 399 U.S. 910, 90 S.Ct. 2201, 26 L.Ed.2d 562 (1970),

■ In the present case, it is beyond dispute that the employees were striking in response to the employer's unfair labor practices, and thus the *Mastro Plastics* rule applies here.[2] On April 29, 1987, the Union made an offer to return to work on behalf of all the employees who had engaged in the strike. The letter read:

> The employees of Columbia Portland Cement (SME), whose names appear on the attached list, *unconditionally* offer to return to work immediately.

Joint Appendix at 138 (emphasis added). The Company refused to reinstate the strikers. We believe that the plain language of the Union's offer indisputably supports the Board's conclusion that the offer was unconditional. The Company attempts to paint the April 27 letter as ambiguous by reference to a subsequent offer made by the Union in September 1987. However, since the original offer in April 1987 was clearly unconditional on its face, any subsequent offer by the Union in September 1987 sheds no light on the reasons for the Company's refusal to reinstate strikers in May 1987 and is irrelevant.

Therefore, we affirm the Board's finding that the offer was unconditional. Any other result would contravene this circuit's position that "the right to reinstatement does not depend on technicalities relating to application" and that a "collective request through the union" will ordinarily suffice to meet a union's obligations under *Mastro Plastics*. *Marlene Indus. Corp. v. NLRB*, 712 F.2d 1011, 1018 (6th Cir.1983).

## III.

■ The Company next argues that it properly withdrew its recognition of the Union because the Union did not have ma-

---

1. According to the Act, an employer violates section 8(a)(3) if he discriminates "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

2. The Board found the strike to be an unfair labor practice strike in an earlier proceeding which was enforced by this court. *Columbia Portland Cement Co. v. NLRB*, 915 F.2d 253 (6th Cir.1990).

jority support. In fact, on July 8, 1988, the Company received a petition signed by over fifty percent of the bargaining unit stating that they did not want the Union to represent them. The Board, however, held that the Company's withdrawal of recognition was improper because its good-faith doubt about the Union's lack of majority support was not credible in light of the Company's unremedied unfair labor practices. In other words, the employee petition could not be relied on as a basis for good-faith doubt as to majority status because it was tainted by the Company's previous unfair labor practices. For the reasons which follow, we agree with the Board's analysis and result.

■ In general, a union is entitled to an irrebuttable presumption of majority status for the first year following its certification by the Board, or during the term of any collective bargaining agreement to which it is a party. *NLRB v. International Ass'n of Bridge, Structural and Ornamental Iron Workers*, 434 U.S. 335, 343 n. 8, 98 S.Ct. 651, 656 n. 8, 54 L.Ed.2d 586 (1978); *Brooks v. NLRB*, 348 U.S. 96, 101–04, 75 S.Ct. 176, 180–82, 99 L.Ed. 125 (1954). Thereafter, the presumption of majority status becomes rebuttable. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37–38, 107 S.Ct. 2225, 2232–33, 96 L.Ed.2d 22 (1987); *NLRB v. Pennco, Inc.*, 684 F.2d 340, 342 (6th Cir.), *cert. denied*, 459 U.S. 994, 103 S.Ct. 355, 74 L.Ed.2d 392 (1982).

■ To rebut the presumption and withdraw recognition of a union, an employer has the burden of demonstrating (1) that the union in fact did not enjoy majority support; or (2) that it had a good-faith belief, founded on a sufficient objective basis, that the union no longer represented a majority of the employees. *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 787, 110 S.Ct. 1542, 1549–50, 108 L.Ed.2d 801 (1990). "This good faith belief must be supported by 'objective considerations which are clear, cogent and convincing.'" *NLRB v. Flex Plastics, Inc.*, 726 F.2d 272, 275 (6th Cir.1984).

"[A] good-faith doubt as to the union's continuing majority status can arise only in a context free of the coercive effect of unfair labor practices." *NLRB v. Powell Elec. Mfg. Co.*, 906 F.2d 1007, 1014 (5th Cir.1990). Therefore, "an employer cannot lawfully withdraw recognition from a union if it has committed as yet unremedied unfair labor practices that reasonably tended to contribute to employee disaffection from the union." *Id.* at 1014–15.

The Company in the instant action argues that the Board erred by failing to conclude that its unfair labor practices *caused* the employee disaffection. In *Master Slack Corp.*, 271 N.L.R.B. 78 (1984), the Board held that the employer's unfair labor practices would prevent reliance on the good-faith defense only when "the unfair labor practices [are] of a character as to either affect the Union's status, cause employee disaffection, or improperly affect the bargaining relationship itself." *Id.* at 84. Thus, "the unfair labor practices must have caused the employee disaffection here or at least had a 'meaningful impact' in bringing about that disaffection." *Id.* (citing *Deblin Mfg. Corp.*, 208 N.L.R.B. 392 (1974)). The Board concluded that there must be a "causal relationship" between the unlawful conduct and the decertifying petition. *Id.*

The Board in *Master Slack*, based on the foregoing recitation of the law, held that the employer's unfair labor practices did not cause the employee's lack of union support. The Board relied, in significant part, on the fact that "8 to 9 years had elapsed between the bulk of the illegal acts and the submission of the petition." *Id.* The Board also considered the nature of the illegal acts, and their potential for causing employee disaffection, and the "effect of the unlawful conduct on employee morale, organizational activities, and membership in the union." *Id.*

Contrary to the Company's arguments on appeal, *Master Slack* is consistent with the Board's conclusion in this action. The Board did find that a causal relationship existed, holding that "we are persuaded that unremedied unfair labor practices of

the extent and seriousness described ... are likely to have undermined the Union's authority generally and influenced [the Union's] employees to reject the Union as their bargaining representative." Joint Appendix at 11. We agree. At the time that the decertification petition was signed, the Company had failed to remedy most of the unfair labor practices lodged against it by an earlier Board order. Unlike *Master Slack*, the unfair labor practice violations here occurred within one year of the decertifying petition.

■ Although there is no direct evidence of causation, we believe that direct evidence is not required. *See Powell Elec.*, 906 F.2d at 1015 (must show that unfair labor practices "reasonably tended to contribute to employee disaffection"); *United Supermarkets, Inc. v. NLRB*, 862 F.2d 549, 552 (5th Cir.1989) (must demonstrate only that unfair labor practices had "a tendency" to interfere with employee choice); *NLRB v. Kaiser Agric. Chems., Div. of Kaiser Aluminum & Chem. Corp.*, 473 F.2d 374, 383 (5th Cir.1973) (direct evidence not required because "the actual effect of coercive conduct is irrelevant") (citing *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969) (a decertifying petition may be invalidated by "less pervasive" unfair labor practices "which nonetheless still have a tendency to undermine majority strength.")). We therefore find that there was substantial evidence to support the Board's conclusion that the Company's unfair labor practices had a reasonable tendency to erode the Union's support thereby precluding the Company from relying on the good-faith defense.

Next, the Company argues that it should have been permitted to withdraw its recognition of the Union because high employee turnover provided a basis for its good-faith doubt as to continued majority status. The Board, however, disagreed, stating that high employee turnover was primarily the result of the Company's unfair labor practices. We believe that the Board reached the proper result.

In *NLRB v. Action Automotive, Inc.*, 853 F.2d 433, 434 (6th Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989), this court held that "a high turnover of employees unaccompanied by objective evidence that new employees do not support the union is no evidence of loss of majority status by the union." *Id.* (quoting *NLRB v. Washington Manor, Inc.*, 519 F.2d 750, 753 (6th Cir.1975)); *Fotomat Corp. v. NLRB*, 634 F.2d 320, 327 (6th Cir.1980). In the present case, the only objective evidence of employee disaffection was the decertification petition, which, as explained above, was tainted by the Company's unfair labor practices. Consequently, the high rate of employee turnover is not enough, standing alone, to demonstrate loss of majority status.

Finally, the Company contends that it was permitted to withdraw Union recognition due to lack of contact with the Union. The Company argues that its counsel only received one letter from Union representative William Smith in the two-month period prior to its withdrawal of recognition. In support of its position, the Company cites *NLRB v. Alvin J. Bart & Co.*, 598 F.2d 1267 (2d Cir.1979), and *Bellwood Gen. Hosp. v. NLRB*, 627 F.2d 98 (7th Cir.1980). These cases are factually dissimilar, however, and do not support the Company's position. In these cases there was overwhelming evidence that the employees had abandoned the union. Here, by contrast, the Company's primary argument is that the Union representative had no contact with the Company. The Company fails to point to any evidence that the unit employees had no contact with the Union. Accordingly, we conclude that the Company failed to meet its burden of demonstrating objective evidence of good-faith doubt as to the Union's lack of majority status. Therefore, we hold that the Board correctly determined that the Company's refusal to recognize the Union violated section 8(a)(5) and (1) of the Act.

## IV.

The Company next argues that the Board erred in concluding that its unilateral changes in wages and grievance procedures violated section 8(a)(5) and (1) of the Act. The Company concedes that the validity of its argument depends upon a finding that its withdrawal of Union recognition

was not unlawful. Because the above argument makes clear that the withdrawal of recognition was unlawful, the Company's unilateral changes in the terms and conditions of employment violated the Act. *See, e.g., NLRB v. M.A. Harrison Mfg. Co.*, 682 F.2d 580, 581–82 (6th Cir.1982) (company may not bypass union by unilaterally changing employment benefits).

In the present case, the stipulated facts reveal that the Company: granted employees a wage increase of 20 cents per hour; replaced the retirement plan with a 401(k) plan; and, changed the grievance procedure to by-pass the union and deal directly with the grievant. These actions all violate the employer's duty to bargain with the employees' exclusive bargaining agent in contravention of section 8(a)(5) and (1). Accordingly, the Board's decision must be affirmed.

### V.

For the foregoing reasons, the petition for review is DENIED, and the application for enforcement is GRANTED.