16 F.3d 410
 145 L.R.R.M. (BNA) 2960
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
R & H COAL COMPANY, INCORPORATED, Respondent.
 No. 92-2615.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 9, 1993.
Decided: Feb. 3, 1994.
 
 On Application for Enforcement of an Order of the National Labor Relations Board. (11-CA-14047)
 Christopher Warren Young, National Labor Relations Board, Washington, D.C., for Petitioner.
 Thomas Michael Lucas, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Respondent.
 Jerry M. Hunter, General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel, Nicholas E. Karatinos, Acting Associate General Counsel,
 Aileen A. Armstrong, Deputy Associate General Counsel, Charles P. Donnelly, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Petitioner.
 Charles L. Woody, Niall A. Paul, Spilman, Thomas, Battle & Klostermeyer, Charleston, West Virginia, for Respondent.
 
 
 1
 N.L.R.B.
 
 
 2
 ENFORCEMENT GRANTED.
 
 
 3
 Before WILKINSON and HAMILTON, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 R & H Coal Company, Inc. was found to have violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act by failing to reinstate unfair labor practice strikers on their tender of an unconditional offer to return to work. The National Labor Relations Board ("Board") ordered R & H to reinstate and make whole seventeen R & H employees who participated in the strike. The Board petitions this Court for enforcement of its order. R & H objects on grounds that the strike was not an unfair labor practice strike and that the offer to return to work was not unconditional. We find that substantial evidence supports the Board's findings and accordingly enforce the order of the NLRB.
 
 I.
 
 5
 Since 1979, R & H has operated a coal mine near Jewell Valley, Virginia on an on-again, off-again basis. Since 1987, R & H has operated as a lessee to the Pittston Coal Group, an affiliate of the Pittston Corporation.
 
 
 6
 After being closed for several years, R & H decided to reopen the mine in August 1987. A month later, R & H became a signatory to the National Bituminous Coal Wage Agreement ("NBCWA") of 1984. On November 16, 1987, the United Mine Workers of America ("Union") notified R & H that it would terminate the NBCWA, as allowed by the Agreement, on January 31, 1988. R & H informed the Union that it would negotiate separately for a new labor contract, but those negotiations were apparently unsuccessful. In late November 1987, R & H again shut the coal mine down.
 
 
 7
 On or about March 7, 1988, R & H reopened the mine. Although the NBCWA had expired, R & H was required to compensate its miners under the terms of the NBCWA until it reached a new collective bargaining agreement with the Union. See NLRB v. Cauthorne, 691 F.2d 1023, 1025 (D.C.Cir.1982); NLRB v. Carilli, 648 F.2d 1206, 1214 (9th Cir.1981). However, R & H paid its miners wages ranging from $11.50 to $12.00 per hour, rather than $14.49 to $15.56 per hour. The Union accordingly filed charges with the Board, which issued a complaint on July 21, 1988.
 
 
 8
 On April 5, 1989, the Union declared a strike against the Pittston Corporation. Four days later, at a regular Union meeting of miners in the Jewell Valley area, Union leaders told miners that a local strike was being considered. The next day--April 10, 1989--the Union declared a strike against R & H.
 
 
 9
 Three months later, the Board ruled on the Union's charges of June 1988, holding that some of R & H's actions constituted unfair labor practices and some of them did not. In an unreported decision of July 11, 1989, the Board ordered R & H to give its employees backpay, plus interest, for the wages they had lost. This Court enforced the Board's order on January 30, 1990.
 
 
 10
 On February 19, 1990, the Union ratified a contract with the Pittston Corporation and thus called off the strike by Pittston employees. The next month, counsel for the Union wrote the following letter to counsel for R & H:
 
 
 11
 As you are aware, we have previously filed unfair labor practice charges against your client. While your client has appealed, the decisions thus far have validated my client's position. Additionally, your client's unfair labor practices are the basis for the ongoing strike which commenced in the spring of 1989. At this time, effective immediately, we hereby make an unconditional offer to return to work. Please advise as to when and to whom our members who are your client's employees should report.
 
 
 12
 Of course, we are willing to continue contractual negotiations. By way of information and not as a condition, we expect that our employees will be returning under the terms and conditions of the most recent collective bargaining agreement.
 
 
 13
 Thank you in advance for a prompt response so that our members can return to work promptly.
 
 
 14
 Counsel for R & H responded on March 26, 1990 with the following letter:
 
 
 15
 Thank you for your letter of March 23, 1990. The representations that R & H's alleged unfair labor practices are the basis for the ongoing strike beginning in the Spring of 1989 are in error. R & H has received information that the President of the Local Union told R & H employees that they should engage in an economic strike of R & H because the union would not allow the employees to work during the pendency of the UMWA strike against The Pittston Coal Group. The strike had nothing to do with any practices of R & H, and R & H was so informed by its employees.
 
 
 16
 Finally, by way of an April 2, 1990 letter, the Union replied to R & H as follows:
 
 
 17
 We are in receipt of your response to our unconditional offer to return to work. It appears to me that your client has developed a creative imagination in order to avoid our offer.
 
 
 18
 From the outset our ULP claim has been clear. In fact our picket shack sign has stated exactly that from day one. I am sure that your client noticed that as he passed through the picket line each day. The R & H strike is not because of Pittston (in fact your client stressed that his coal, unlike others, did not even go to Pittston).
 
 
 19
 We stand by our offer and we will not accept your client's weak denial. The offer and your rejection will be communicated to the NLRB. Again we renew our unconditional offer to return to work.
 
 
 20
 Based on this correspondence, the Union filed charges with the Board, which issued a complaint on November 1, 1990. An administrative law judge ruled on these charges on March 16, 1992, and the Board adopted the administrative law judge's findings on September 30, 1992. The Board ordered R & H to rehire the seventeen striking employees with no loss of seniority and to make them whole via backpay plus interest from March 23, 1990.
 
 
 21
 On December 23, 1992, the Board applied to this Court for enforcement of it order. R & H opposed the application.
 
 II.
 
 22
 R & H contends that the strike by its employees was not truly an unfair labor practice strike, but rather an economic strike in sympathy with Pittston.
 
 
 23
 An "unfair labor practice strike" is a strike caused in whole or in part by an employer's unfair labor practice. Northern Wire Corp. v. NLRB, 887 F.2d 1313 (7th Cir.1989); Columbia Portland Cement Co. v. NLRB, 979 F.2d 460 (6th Cir.1992). The character of a strike--"economic" or "unfair labor practice"--depends on its cause; work stoppage is an unfair labor practice strike only if an employer's violations of labor laws are a cause of the strike. General Indus. Employees Union, Local 42, Distillery, Rectifying, Wine and Allied Workers' Int'l Union, AFL-CIO v. NLRB, 951 F.2d 1308 (D.C.Cir.1991).
 
 
 24
 Merely because an employer commits an unfair labor practice during a strike does not automatically convert an economic strike into an unfair labor practice strike; there must be substantial evidence that an unfair labor practice aggravated or promoted a preexisting economic strike. Facet Enterprises, Inc. v. NLRB, 907 F.2d 963 (10th Cir.1990).
 
 
 25
 In determining strike motivation, the dispositive question is whether the employees, in deciding to go on strike, were motivated in part by the unfair labor practices committed by their employer, not whether, without that motivation, the employees might have struck for some other reason. Decker Coal Company, 301 NLRB 108 (1991).
 
 
 26
 Testifying for the Union, Local President Ken Shaw and International Associate General Counsel Judy Scott said that they had been contemplating a strike against R & H for unfair labor practices for some time, but had not done so because they did not want to jeopardize ongoing contract negotiations with Pittston. Scott said the Union feared spillover striking into Pittston if the Union ordered R & H employees to strike. Thus, the timing of the R & H strike--five days after the Pittston strike--was due to the Union's fear of spillover. Witnesses for the Union also testified that picketers displayed signs reading "Unfair Labor Practice Strike" and that a Union telegram authorizing the strike designated it as such.
 
 
 27
 Several former employees of R & H testified that at the April 9, 1989 meeting that preceded the April 10th strike, Union leaders said they might strike locally based on how deeply involved R & H was with Pittston. According to the testimony, there was no discussion of unfair labor practices. R & H further notes that there had been no finding of unfair labor practice at the time the strike was called.
 
 
 28
 R & H also cites the fact that strikes against other mining companies were authorized at the same time as the strike against R & H as evidence that Union leaders who were involved with Pittston were merely trying to increase their bargaining power over Pittston by wreaking havoc on the coalfields of several states.
 
 
 29
 To the extent that the Board's decision rests on findings of fact for which there is substantial evidence in the record as a whole, this Court must defer to that decision. Lundy Packing Co. v. NLRB, 856 F.2d 627, 629 (4th Cir.1988). Further, this Court does not re-weigh the credibility determinations of the administrative law judge and the Board. In light of these standards, this Court finds that substantial evidence supports the Board's decision that the strike against R & H was an unfair labor practice strike.
 
 III.
 
 30
 Unfair labor practice strikers, unlike economic strikers, are entitled to immediate reinstatement upon their unconditional offer to return to work. Lapham-Hickey Steel Corp. v. NLRB, 904 F.2d 1180 (7th Cir.1990). An employer's refusal to reinstate such strikers violates sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act. Id.
 
 
 31
 R & H contends that the Union's offer to return to work was not truly unconditional, despite its language to the contrary, because it mandated a condition, noncompliance with which could result in an unfair labor practice charge.
 
 
 32
 The Board asserts that the labelling of the offer as unconditional is controlling and that merely stating the Union's expectations does not destroy the unconditional nature of the offer.
 
 
 33
 R & H compares the situation to that in NLRB v. International Ass'n of Steel Fabricators, Inc., 582 F.2d 135 (2d Cir.1978), cert. denied, 439 U.S. 1130 (1979), in which the court held that a letter containing an "unconditional" offer to return to work, accompanied by another letter demanding implementation of a certain collective bargaining agreement, was not in fact, as well as form, unconditional. The court held that the company's employees were not entitled to reinstatement as unfair labor practice strikers. 582 F.2d at 152.
 
 
 34
 The Board asserts that Steel Fabricators is not controlling because, here, the Union merely expressed its expectation that R & H would comply with the court-enforced order by restoring the terms that it had unlawfully changed. The Board also asserts that an employer with doubt that an offer of unconditional reinstatement will be accepted should test those doubts by making the offer, not by refraining from doing so. See Alaska Pulp Corp., 300 NLRB 232, 243 (1990), enforced mem., 944 F.2d 909 (9th Cir.1991) (economic strikers).
 
 
 35
 The administrative law judge found that R & H's arguments with respect to the nature of the offer were "lacking in merit." The Board adopted this finding. This Court finds no error in application of the law, nor any finding unsupported by substantial evidence.
 
 
 36
 For the foregoing reasons, the order of the Board is ENFORCED.