113 F.3d 623
 155 L.R.R.M. (BNA) 2308, 133 Lab.Cas. P 11,825
 ALLIED MECHANICAL SERVICES, INC. (96-5208); Plumbers and
Pipe Fitters Local 337, United Association of Journeymen and
Apprentices of the Pipe Fitting Industry of the United
States and Canada, AFL-CIO (96-5411), Petitioners/Cross-Respondents,
v.
NATIONAL LABOR RELATIONS BOARD (96-5332), Respondent/Cross-Petitioner.
 Nos. 96-5208, 96-5332 and 96-5411.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 17, 1997.
Decided May 16, 1997.
Rehearing Denied July 9, 1997.
 
 Gary A. Chamberlin (briefed), Miller, Johnson, Snell & Cumminskey, Grand Rapids, MI, Barry R. Smith (argued and briefed), Miller, Johnson, Snell & Cummiskey, Kalamazoo, MI, for Petitioners/Cross-Respondents.
 Aileen A. Armstrong, Deputy Asso. Gen. Counsel, Peter Winkler (briefed), National Labor Relations Board, Appellate Court Branch, Meredith L. Jason (argued and briefed), National Labor Relations Board, Washington, DC, for Respondent/Cross-Petitioner.
 Tinamarie Pappas (argued and briefed), Rose, Weber & Pappas, Ann Arbor, MI, for Plumbers and Pipe Fitters Local 337, United Association of Journeymen and Apprentices of the Pipe Fitting Industry of the United States and Canada, AFL-CIO in No. 96-5411.
 Before: KENNEDY, CONTIE, and NORRIS, Circuit Judges.
 OPINION
 CONTIE, Circuit Judge.
 
 
 1
 The National Labor Relations Board ("the Board") found that Allied Mechanical Services, Inc. ("the Company") violated the National Labor Relations Act ("the Act") by refusing to reinstate striking employees. The Company petitioned this court to review the Board's findings, the Board filed a cross-petition seeking enforcement of its order, and the Union petitioned this court to review the Board's refusal to order the reinstatement of one striking employee, Gil Ragsdale. We enforce the Board's Decision and Order in its entirety for the following reasons.
 
 I.
 
 2
 Allied Mechanical Services manufactures and installs heating, plumbing and air conditioning systems. The Company's plumbing and pipefitting employees are represented by the United Association of Journeymen and Apprentices of the Pipe Fitting Industry of the United States and Canada, AFL-CIO, Plumbers and Pipe Fitters Local 337 ("the Union").
 
 
 3
 Between December 1991 and July 1992, the Union filed numerous charges with the Board alleging that the Company had engaged in unfair labor practices. Specifically, the Union alleged that the Company: coerced, intimidated and discriminated against Union supporters; and refused to bargain in good faith.
 
 
 4
 On July 20, 1992, after meeting with Union representative Vince Cristiano ("Representative Cristiano"), twelve employees struck the Company. On August 4, ten of the twelve employees made unconditional written offers to return to work; the two remaining strikers--John Powers and Jim Bronkhurst--were not listed on the unconditional offer to return to work drafted by Representative Cristiano. On September 8, Powers and Bronkhurst made unconditional written offers to return to work. On September 11, the Company reinstated the ten strikers that had offered to return to work on August 4, but refused to reinstate Powers and Bronkhurst.
 
 
 5
 On September 23, the Union filed unfair labor practice charges against the Company. Specifically, the Union accused the Company of retaliating against the returning strikers (particularly Steve Titus and Grant Maichele),[1] and opposed the Company's refusal to reinstate Powers and Bronkhurst. On October 16, the Union notified the Company (by letter) that numerous employees (Titus, Maichele, Harold Hill, Mac Rognow, Gil Ragsdale and Ted Fuller) were going out on strike to protest the Company's unfair labor practices.
 
 
 6
 In response, the Company asserted that the striking employees were not engaged in an unfair labor practice strike as defined by the Act. The Company also sent a letter to employees Powers and Bronkhurst accepting their September 8 unconditional offers to return to work (effective October 19). On November 10, five of the six October strikers made an unconditional offer to return to work; one striking employee (Gil Ragsdale) was not listed on the Union's written offer to return to work.
 
 
 7
 On November 16, the Union and the Company agreed to settle the outstanding unfair labor practice actions then pending before the Board.[2] Though Representative Cristiano assumed that the Company would immediately reinstate all of the striking employees following execution of the settlement agreement, the agreement did not discuss reinstatement rights.
 
 
 8
 On November 17, the six strikers (including Gil Ragsdale) met with the Company's president, John Huizinga. Though the employees met with Huizinga in his office, some of the employees (including Ragsdale) apparently stood outside of Huizinga's office in a waiting room area. When the striking employees handed Huizinga a copy of the Union's November 10 letter expressing their desire to return to work,[3] Huizinga told the strikers that he had no work for them at that time.
 
 
 9
 Months later, the Company's attorney informed Representative Cristiano that the strikers had been replaced. Indeed, the record reveals that the Company hired the replacements after the strikers had sought reinstatement. Representative Cristiano filed new charges with the Board alleging that the Company violated the Act by refusing to reinstate the striking workers.
 
 
 10
 On June 24, 1993, Representative Cristiano notified the Company that four employees (Bronkhurst, Falk, Preston and Rowden) were going on strike to protest the Company's unfair labor practices. The Company, in response, asserted that it did not consider the striking employees' conduct to be protected by the Act. On July 6, 1993, the four striking employees unconditionally offered to return to work; the Company refused to reinstate these workers.
 
 
 11
 On December 18, 1995, the Board found that the Company violated sections 8(a)(3) and (1) of the Act, 29 U.S.C. §§ 158(a)(3) and (1), by failing to reinstate striking employees Bronkhurst, Falk, Fuller, Hill, Maichele, Preston, Rognow, Rowden and Titus following their unconditional offers to return to work.[4] However, the Board found that the Company properly refused to reinstate striking employee Ragsdale because he had failed to effectively communicate to the Company his unconditional offer to return to work.
 
 
 12
 On February 20, 1996, the Company petitioned this court for review. On March 18, 1996, the Board filed a cross-application seeking enforcement of its order. On April 1, 1996, the Union petitioned this court to review the Board's refusal to order Gil Ragsdale's reinstatement. We have jurisdiction to entertain this appeal pursuant to 29 U.S.C. §§ 160(e) and (f).
 
 II.
 Standard of Review
 
 13
 We review the Board's findings of fact to determine whether they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). See also NLRB v. C.J.R. Transfer, Inc., 936 F.2d 279, 281 (6th Cir.1991) ("We uphold the Board's findings of fact where substantial evidence in the record supports the findings.") (citations omitted). "Evidence is considered substantial if it is adequate to a reasonable mind to uphold the decision." NLRB v. Brown-Graves Lumber Co., 949 F.2d 194, 196 (6th Cir.1991) (citation omitted). We review questions of law de novo. NLRB v. C.J.R. Transfer, Inc., 936 F.2d at 281.
 
 
 14
 The Company's Refusal to Reinstate the Striking Workers
 
 
 15
 On appeal, the Company argues that the Board's decision is "unsupported by substantial record evidence and is incorrect as a matter of law." Petitioner's Brief at 17. In response, the Board asserts that the Company violated the Act by refusing to reinstate the strikers that offered to return to work:
 
 
 16
 The Company concedes that if the employees were engaged in protected activity when they struck in October 1992 and June 1993, then it violated Section 8(a)(3) and (1) of the Act by failing to reinstate those strikers who made unconditional offers to return to work. Ample evidence supports the Board's finding that the employees' conduct was protected. Indeed, the record evidence demonstrates that the employees struck to protest the Company's alleged unfair labor practices and in support of their demand for a collective-bargaining agreement. Under well settled law, such strikes are protected activity.
 
 
 17
 Respondent's Brief at 15 (citation omitted).
 
 
 18
 An employer that refuses to reinstate striking employees violates sections 8(a)(3) and (1) of the Act, 29 U.S.C. §§ 158(a)(3) and (1), unless it can show "legitimate and substantial business justifications" for its refusal to reinstate the strikers.[5] NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 379, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967). The employer bears the burden of establishing that justification. Teledyne Indus., Inc. v. NLRB, 938 F.2d 627, 629 (6th Cir.1991). Absent such a showing, an employer's refusal to reinstate strikers constitutes an unfair labor practice because it discourages employees from exercising their rights to organize and strike as guaranteed by the Act. NLRB v. Fleetwood Trailer Co., 389 U.S. at 378, 88 S.Ct. at 545-46. Accordingly, we must determine whether the October and June strikes were protected activities under the Act.
 
 
 19
 "A strike which is caused in whole or in part by an employer's unfair labor practices is an unfair labor practice strike." Columbia Portland Cement Co. v. NLRB, 979 F.2d 460, 463 (6th Cir.1992) (citation omitted). "Employees who go out on strike in response to an employer's unfair labor practices may not be permanently replaced by other employees." Id. Indeed, "[u]nfair labor practice strikers are entitled to immediate reinstatement by the employer upon their unconditional offer to return to work." Id. (citations omitted). "Refusing to reinstate striking employees after their unconditional offer to return to work violates section 8(a)(3) and (1) of the Act." Id. (footnote omitted).
 
 
 20
 In this action, the record reveals that the employees struck in October 1992 and June 1993 to protest the Company's treatment of returning strikers, its failure to reinstate other strikers, its harassment of Union supporters, and its failure to negotiate a contract with the Union. The Company defends its actions by claiming that the striking employees were not entitled to reinstatement because: the strikers failed to articulate specific demands; the Union failed to raise the striking employees' concerns at the bargaining table; the strikers engaged in unlawful "intermittent work stoppages"; the Union coerced the employees to go on strike; and the parties' November 16, 1992 settlement agreement barred this action. The Board rejected the Company's assertions.
 
 
 21
 1. The Strikers' Failure to Articulate Specific Demands
 
 
 22
 The record reveals that the Union sent a letter to the Company prior to each strike detailing the reasons for the strike. Moreover, unfair labor practice complaints were pending against the Company prior to, and during, the October 1992 and June 1993 strikes. In light of these undisputed facts, the Company's claim that the employees' reasons for striking were unknown must be rejected.
 
 
 23
 2. The Union's Failure to Raise The Strikers' Concerns at
 
 The Bargaining Table
 
 24
 Though the Company asserts that the Union should have raised the employees' concerns at the bargaining table before, during, or after striking, alternative avenues of redress are often inadequate substitutes for the right to strike. Because the employees' decision to support their demands with a strike was reasonable under the circumstances in this action, we reject the Company's second assignment of error.
 
 
 25
 3. The Strikers' "Intermittent Work Stoppages"
 
 
 26
 Though the Company asserts, on appeal, that the Union engaged in unprotected "intermittent work stoppages," we need not resolve this claim because the Company failed to raise it before the Board. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66, 102 S.Ct. 2071, 2082-83, 72 L.Ed.2d 398 (1982) (reviewing court lacks jurisdiction to entertain objections not raised before the Board).
 
 4. The Union's Role in Coercing The Strike
 
 27
 The Company also asserts that the employees' actions were not protected by the Act because the strikers were coerced by the Union to strike. Once again, the Company's argument was not raised before the Board. Accordingly, we need not consider the issue. See 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). See also Southern Moldings, Inc. v. NLRB, 728 F.2d 805, 806 (6th Cir.1984) (en banc) ("We now conclude that we lack jurisdiction of this question ... because this specific issue was not raised before the Board prior to its decision, or upon reconsideration.") (footnote omitted).
 
 
 28
 5. The Parties' November 16, 1992 Settlement Agreement
 
 
 29
 Though the Company asserts that the parties' November 16, 1992 settlement agreement bars this action, that agreement does not preclude a finding that the Company violated the Act after the settlement agreement was reached by refusing to reinstate the October 1992 strikers that offered to return to work when the settlement agreement was reached. The ALJ and the Board properly found that the Union did not know, and could not have known, at the time of the settlement that the Company did not intend to reinstate the strikers. Because the Union reasonably believed that the Company intended to reinstate the strikers, the parties' November 16, 1992 settlement agreement does not bar this action.
 
 
 30
 Because the Board properly found that the Company violated the Act by refusing to reinstate the striking employees who made unconditional offers to return to work after engaging in protected strikes, we affirm the Board's decision.
 
 III.
 
 31
 The Company's Refusal to Reinstate Gil Ragsdale
 
 
 32
 The Board found that an unconditional offer to return to work was not communicated by, or on behalf of, Gil Ragsdale. In its petition, the Union asserts that the Board's finding is not supported by substantial evidence:
 
 
 33
 The undisputed record evidence revealed that an unconditional offer to return to work was effectively communicated by employee representative Harold Hill to Employer president John Huizinga on November 17, 1992, on behalf of all of the October 16 striking employees, including Gil Ragsdale, who was present during the entire meeting with Mr. Huizinga.... The Employer never offered evidence disputing the fact that Ragsdale was present at the November 17 meeting. Similarly, the Employer presented no evidence suggesting that Huizinga failed to note Ragsdale's presence at the meeting, or that Huizinga perceived the offer made by Hill as encompassing only the five employees whose names were set forth in the Union's November 10 letter. Thus, based on the record evidence, the Board should have concluded that an unconditional offer to return was made on Ragsdale's behalf.
 
 
 34
 ....
 
 
 35
 Finally, even assuming, arguendo, that a valid offer to return was not made or effectively communicated on Ragsdale's behalf, ... the Board misapplied the law in concluding that Ragsdale was not entitled to reinstatement. As of November 17, the Employer made clear that it would not reinstate the October 16 strikers to employment. Indeed, the Employer subsequently never offered those individuals employment, and instead, unlawfully hired new employees to replace them. Thus, it was clear from the outset that because of the Employer's unlawful discrimination, any attempts by the employees to secure reinstatement would be nothing more than a futile gesture. Accordingly, the Board should have followed existing case law to conclude that all of the strikers, including Ragsdale, were entitled to reinstatement, despite the arguable lack of an offer to return, due to the inescapable fact that the Employer's conduct rendered any offers to return an act of futility.
 
 
 36
 Union's Brief at 8-9.
 
 
 37
 In response, the Board reasserts its finding that Ragsdale never communicated an unconditional offer to return to work:
 
 
 38
 [T]he Board acted reasonably in finding that employee Gil Ragsdale, who struck in October 1992, never communicated to the Company an unconditional offer to return to work. The undisputed evidence demonstrates that the Union omitted Ragsdale's name from its two written unconditional offers to return to work made on behalf of the October strikers, that those written offers were never corrected, and that its subsequent oral offer was not clearly communicated on Ragsdale's behalf. Accordingly, the Board reasonably found that [the] Company had no obligation to reinstate Ragsdale.
 
 
 39
 Respondent's Brief at 16.
 
 
 40
 Though an employer must reinstate a striking employee when the employee makes an unconditional offer to return to work, Marlene Indus. Corp. v. NLRB, 712 F.2d 1011, 1022 (6th Cir.1983), "[t]he burden [is] on the General Counsel to establish the existence of an unconditional offer to return to work." Id. In this action, the Board concluded that the General Counsel failed to establish the existence of Ragsdale's unconditional offer to return to work. We affirm the Board's decision and its refusal to order Ragsdale's reinstatement.
 
 
 41
 Ragsdale's name was not written on the unconditional offer to return to work that was presented by the Union to the Company on two occasions.[6] Though Ragsdale was present on November 17 when the strikers met with Huizinga, Ragsdale did not communicate his unconditional offer to return to work at that time. Indeed, striking employee Hill, acting as the strikers' spokesman, simply handed Huizinga a copy of the letter (which omitted Ragsdale's name) and noted the strikers' intent to return to work. Ragsdale, however, stood outside of Huizinga's office throughout the meeting. Accordingly, there is no evidence that Huizinga was even aware of Ragsdale's presence that day or that he knew of Ragsdale's desire to return to work.[7]
 
 
 42
 In the alternative, the Union argues that Ragsdale did not offer to return to work because an offer would have been futile given the Company's failure to reinstate the other strikers. We reject the Union's argument because Ragsdale did not know of the Company's decision to replace the striking workers until months after the strikers met with Huizinga. Accordingly, the Company's plan to replace the strikers was not known when the strikers sought reinstatement. See generally Colecraft Mfg. Co. v. NLRB, 385 F.2d 998, 1005 (2d Cir.1967) ("When the employer refused to rehire those strikers who reported [after receiving] replacement letters, the employer's intent became clear and other employees who had received similar letters were excused from making personal appearances."); NLRB v. Park Edge Sheridan Meats, Inc., 323 F.2d 956, 959 (2d Cir.1963) (where an employer has made clear his refusal to reinstate strikers, each striker need not undertake the futile gesture of offering in person to return to work). We therefore reject the Union's claim.
 
 IV.
 
 43
 We ENFORCE the Board's Decision and Order in its entirety for the aforementioned reasons.
 
 
 
 [1]
 The Union alleges that Steve Titus and Grant Maichele were transferred to less-desirable positions
 
 
 [2]
 The Board's Regional Director approved the settlement agreement on November 30, 1992
 
 
 [3]
 As previously noted, Gil Ragsdale's name was not listed on the Union's November 10 letter
 
 
 [4]
 The Board ordered the Company to immediately reinstate these employees
 
 
 [5]
 Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), prohibits discrimination intended to discourage union activity. Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), prohibits employers from interfering with, restraining, or coercing employees in the exercise of their rights under the Act
 
 
 [6]
 The Union mailed the letter to the Company and hand-delivered it to Huizinga personally
 
 
 [7]
 Indeed, the omission of Ragsdale's name from the Union's offer to return to work was not suspicious given the Union's custom of having some Union members strike the Company while others continued to work