**MANNA PRO PARTNERS, L.P., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 91–9563.

United States Court of Appeals, Tenth Circuit.

March 1, 1993.

Timothy K. Kellett of Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO (Joan Z. Cohen of Armstrong, Teasdale, Schlafly & Davis, James L. Harrison, John R. Trigg of Parcel, Mauro, Hultin & Spaanstra, P.C., with him on the brief), for petitioner.

Howard E. Perlstein, Atty., N.L.R.B. (Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, with him on the brief), Washington, DC, for respondent.

Before BALDOCK and HOLLOWAY, Circuit Judges, and O'CONNOR, District Judge.*

BALDOCK, Circuit Judge.

Manna Pro Partners, L.P. ("Manna Pro") petitions for review of an order by the National Labor Relations Board ("the Board"). Manna Pro challenges the Board's finding that Manna Pro violated 29 U.S.C. § 158(a)(1) and (5) by refusing to bargain with the American Federation of Grain Millers, Local 155 ("the Union").

In its Reply Brief, Manna Pro contests the Board's finding that it violated 29 U.S.C. § 158(a)(1) by telling job applicants they would not be represented by the Union, and by informing employees that Manna Pro had refused to recognize or bargain with the Union. Manna Pro frames two additional issues for review: (1) whether the Board's determination that Manna Pro unlawfully refused to bargain because it did not have a reasonably based, good faith doubt of the Union's majority status is supported by substantial evidence on the record as a whole, and (2) whether the Board erred as a matter of law in refusing to consider evidence relating to Manna Pro's "in fact" defense. General Counsel seeks enforcement of the Board's order in

* The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation.

its entirety.[1] We have jurisdiction pursuant to 29 U.S.C. § 160(e) and (f).

The business entity at issue is a feed mill located in Denver, Colorado. Prior to February 1990, the feed mill was owned and operated by Farmers Marketing Association ("FMA"), which had been in Chapter 11 bankruptcy for several years. Pursuant to a bankruptcy liquidation arrangement, FMA and Manna Pro Corporation formed a partnership, with Manna Pro acquiring and operating the mill. Under the partnership, Manna Pro became the general partner and manager, with FMA occupying a more passive role as a limited partner. FMA ceased operating the Denver facility on February 23, 1990, and Manna Pro reopened the facility and resumed operations on February 26, 1990.

Historically, FMA's thirty to forty production, maintenance, and truck driver employees were represented by the Union. In 1984, following a three-day strike, FMA and the Union executed a new collective bargaining agreement that provided for reduced wages, hours, and benefits. In the ensuing years, prior to Manna Pro's takeover, the Union held monthly meetings, appointed stewards, processed grievances, and negotiated agreements with FMA. The final agreement between FMA and the Union, scheduled to expire on January 31, 1990, was extended to the February 23, 1990 date when FMA ceased operations.

In the weeks prior to Manna Pro's takeover, John Markley, a Manna Pro agent who would become general manager of the partnership, interviewed approximately fifty candidates, including an undetermined number of FMA employees, for positions in the new operation. The majority of the employees hired for the new operation—approximately twenty out of thirty—were former FMA employees. During at least two interviews, FMA employees asked Markley if they would be represented by the Union. Markley replied that, to the best of his knowledge, they would not be

represented by a union because they were brand new employees coming into a brand new entity. He also added that whether or not the new employees wanted a union would be up to them. Two employees told Markley that they were happy there would be no union.

On February 20, 1990, anticipating Manna Pro's takeover of FMA, the Union sent a letter to Jack Hall, attorney for Manna Pro, requesting a list of dates on which Manna Pro would be available to begin contract negotiations. Hall responded to the Union's request by letter dated March 6, 1990:

> It is the position of [Manna Pro] ... that it should not be required to bargain with any union. [Manna Pro] has reason to believe that no union has a majority support of the employees who are starting out this new fledgling business.
>
> . . . .
>
> In view of all the foregoing, [Manna Pro] considers your request to bargain for a collective bargaining agreement untimely and inappropriate.

Prior to Hall's letter, George Bond, Manna Pro's plant superintendent, was told by one employee that he did not want a union. Bond also overheard three employees saying that they did not want to pay union dues for nothing. Bond informed Markley of these statements.

On March 8, 1990, Markley met with a majority of the employees and their supervisors to discuss the situation. Markley first read Hall's March 6, 1990 refusal to bargain letter and then stated:

> Now I agree with what Hall has written. In fact I approved it before it was sent. However, I do want to add this: whether or not you support the [Union] to be a bargaining agent for you is up to you folks. I'm not discouraging or encouraging you in your feelings about them or

---

**1.** The Board also found that Manna Pro violated 29 U.S.C. § 158(a)(1) by soliciting employees to prepare and obtain signatures on antiunion petitions or letters. Manna Pro does not contest this finding. Accordingly, the Board is entitled to summary enforcement of the related portion of its order. *Monfort, Inc. v. NLRB,* 965 F.2d 1538, 1540 n. 1 (10th Cir.1992).

any other union. Such matters are completely your own individual decision.

It's my personal feeling, though, that you don't need a union to represent you in this plant. I know some of you have indicated you feel the same way. If a majority of you feel that way, then the [Union's] claim that they represent a majority is not correct, and [Manna Pro] should not agree to bargain with them. You have the ball in your court. You can go to the National Labor Relations Board in Denver and consult with them as to your rights. I *can* tell you this: you can circulate a petition informally in the plant for people to sign if they want to, which says something like the following: "We, the undersigned, do not want to be represented by the [Union] as our collective bargaining agent." Or, if you wish, you can each individually write to me stating the same thing. You must sign and date your letter as well as the petition.

We have a wonderful opportunity here to get a good operation going. The matter as to whether you sign such a petition or write an individual letter is up to you. It's all voluntary on your part. There'll [sic] be no retaliation or ill-will against anyone who doesn't sign or write. No matter what happens here, I'm going to do everything in my power to make this operation a success. I need all of you doing the same regardless of your feelings about the [Union] or any other organization.

Following this meeting, an employee came to Markley and told him that he did not want to be represented by the Union. Markley reiterated to the employee that if he felt that way and he was so inclined, he should put it in writing and give it to Markley.

On March 20, 1990, the Union filed an unfair labor practice charge with the Board alleging that Manna Pro was unlawfully refusing to bargain. On April 26, 1990, Markley was advised by Manna Pro's then-counsel, Eugene De Shazo, that it appeared that Manna Pro was going to be required to bargain with the Union. Thereafter, Markley sought out three employees whom he had come to believe were opposed to the Union, and told them that De Shazo said that Manna Pro would have to bargain with the Union. The employees stated that they did not want representation, and asked Markley what they could do about it. Markley replied that Manna Pro needed written evidence containing valid employee signatures—letters or petitions to Markley or the Board—indicating that the employees did not want union representation. Shortly thereafter, Markley received four petition-type documents signed by a number of employees.

■ The Board affirmed the ALJ's finding that Markley's statements to job applicants concerning union representation, Markley's statements to employees on March 8, 1990 concerning Manna Pro's refusal to bargain, and Markley's solicitation of employee antiunion petitions were unlawful. The ALJ also found, and the Board affirmed, that as a successor employer[2] to FMA, Manna Pro had unlawfully refused to bargain with the Union. During the hearing before the ALJ, in defense to the unlawful refusal to bargain charge, Manna Pro sought to introduce into evidence the four employee petitions, as well as testimony from twenty-two current employees, whom, the offer of proof submitted, would testify that they did not support the Union on March 6, 1990. The ALJ refused to admit the evidence, and the Board affirmed the ALJ's determination that any such evidence should be excluded because it would be tainted by Manna Pro's unfair labor practices.

■ On review, we accept the Board's findings of fact and reasonable inferences therefrom, if supported by substantial evidence on the record considered as a whole.

**2.** A successor employer is one which has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations. *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1986). Manna Pro stipulated that it is a successor employer to FMA, and that the majority of its employees were former FMA employees.

*Monfort, Inc. v. NLRB*, 965 F.2d 1538, 1540 (10th Cir.1992); *NLRB v. L & B Cooling, Inc.*, 757 F.2d 236, 241 (10th Cir.1985). We afford considerable deference to the Board's conclusions of law if they are based upon a reasonably defensible construction of the National Labor Relations Act ("the Act"). *NLRB v. Iron Workers*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978).

## I.

■ We first address Manna Pro's contention that Markley's statements to job applicants that they would not be represented by the Union did not constitute an unfair labor practice under § 158(a)(1). Manna Pro contends that at the time of these statements, Manna Pro's status as a successor employer had not yet been established and as a result, Markley's statements were not unlawful.

■ Section 158(a)(1) is not ordinarily violated when an employer, not already under a bargaining obligation, states that it will not have a union at its plant. *Williams Enters. v. NLRB*, 956 F.2d 1226, 1234 (D.C.Cir.1992). However, a successor employer violates § 158(a)(1) by making a similar statement to its predecessor's union-represented employees. *Id.* (citing *Kessel Food Markets, Inc.*, 287 N.L.R.B. 426, 429 (1987), *enf'd*, 868 F.2d 881 (6th Cir. 1989)). Any statement by a successor employer to its predecessor's employees that it will be nonunion indicates to the applicants that unless they conduct themselves accordingly their employment possibilities may be jeopardized. *Id.* at 1235. A potential successor employer does not violate § 158(a)(1), however, if at the time it is interviewing applicants, it objectively believes that it will not reach successor status because the majority of its employees will not be hired from its predecessor. *Id.*

Manna Pro is a successor employer to FMA, and FMA employees were represented by the Union. As a result, Markley was not permitted to tell FMA applicants that

Manna Pro would be nonunion, unless at the time of the interviews, it objectively believed that FMA employees would make up less than a majority of Manna Pro's work force. Manna Pro has made no such showing; therefore, we uphold the Board's determination that Markley's statements to at least two FMA employee applicants that Manna Pro employees would not be represented by the Union violated § 158(a)(1).

## II.

■ Manna Pro also disputes the Board's finding that Markley violated § 158(a)(1) on March 8, 1990 by telling employees that Manna Pro had refused the Union's request to bargain.[3] Manna Pro alleges that Markley's statements on March 8, 1990 were not coercive; rather, they were merely opinions and statements of fact and as such were protected speech under 29 U.S.C. § 158(c).

■ An employer violates § 158(a)(1) by making statements that tend to coerce employees in the exercise of their statutory right to self-organize and to engage in activities for the purpose of collective bargaining. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617–18, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969). On the other hand, § 158(c) preserves the employer's right to express "any views, argument, or opinion" so long as such expression does not contain a "threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). Whether an employer's statements are coercive must be viewed in the context of the labor relations setting. *Gissel Packing Co.*, 395 U.S. at 617, 89 S.Ct. at 1941. We give deference to the Board's expertise in judging the impact of statements made in the context of employer-employee relationships, *id.* at 620, 89 S.Ct. at 1943, and the question of whether particular conduct is coercive within the meaning of § 158(a)(1) is also committed, in the first instance, to the Board. *Id.; NLRB v. Gold Spot Dairy, Inc.*, 417 F.2d 761, 762 (10th Cir.1969).

---

**3.** Manna Pro was charged with separate violations for (1) telling its employees that it had refused to bargain with the Union, and (2) actually refusing to bargain with the Union. *See infra parts III and IV* (discussing Manna Pro's refusal to bargain).

The Board has consistently held that it is inherently coercive for an employer, *already under a bargaining obligation,* to tell its employees that it intends to operate nonunion, or will not sign a contract with the union. *See e.g., Transportation Equipment Servs.,* 293 N.L.R.B. 125 (1989); *Cascade Painting Co., Inc.,* 277 N.L.R.B. 926 (1985); *Antonino's Restaurant,* 246 N.L.R.B. 833 (1979), *enf'd sub nom. NLRB v. Carilli,* 648 F.2d 1206 (9th Cir.1981). Although Manna Pro argues that *other* statements by Markley on March 8, 1990 were not coercive, it does not dispute that Markley's telling employees that Manna Pro had refused to bargain with the Union was coercive. Nor does Manna Pro argue that the Board's rule that such statements are inherently coercive is irrational or inconsistent with the Act. Therefore, because we agree with the Board that Manna Pro was already under a bargaining obligation on March 8, 1990, *see infra parts III and IV,* and because we believe that the Board's rule is rational and consistent with the Act, *see e.g., NLRB v. K & K Gourmet Meats, Inc.,* 640 F.2d 460, 464 (3d Cir.1981), we uphold the Board's determination that Manna Pro, by informing employees on March 8, 1990 that Manna Pro had refused to recognize or bargain with the Union, violated § 158(a)(1).

## III.

Manna Pro also disputes the Board's finding that it violated § 158(a)(1) and (5) by refusing to bargain with the Union. We first address Manna Pro's contention that the record does not support the Board's determination that Manna Pro unlawfully refused to bargain because it did not have a reasonably-based, good faith doubt of the Union's majority status.

 When a successor employer hires the majority of its employees from its pre-decessor it assumes the predecessor's bargaining obligation and violates § 158(a)(1) and (5) if it refuses to bargain with the representative of its predecessor's employees. *Fall River Dyeing & Finishing Corp.,* 482 U.S. at 34–41, 107 S.Ct. at 2231–34, 96 L.Ed.2d 22 (1987); *Coastal Derby Refining Co. v. NLRB,* 915 F.2d 1448, 1451–52 (10th Cir.1990). However, a successor employer can refuse to recognize the predecessor's union if at the time of its refusal to bargain, the successor employer had a " 'good faith' doubt, founded on a sufficient objective basis, of the union's majority support." *NLRB v. Curtin Matheson Scientific, Inc.,* 494 U.S. 775, 778, 110 S.Ct. 1542, 1545, 108 L.Ed.2d 801 (1990). To establish a good faith defense, an employer must produce some objective evidence to substantiate its doubt that the union continues to enjoy majority status. *Johns–Manville Sales Corp. v. NLRB,* 906 F.2d 1428, 1431 (10th Cir.1990). "Whether the evidence demonstrates a sufficient basis to doubt the union's status must be determined in light of the totality of the circumstances in each case." *Id.*

 The Board found that on the date Manna Pro refused to bargain with the Union—March 6, 1990—it lacked a sufficient objective basis to justify its doubt about the Union's majority status. The record reflects that on March 6, 1990 Manna Pro was aware of the following facts: (1) two FMA employees, while interviewing for jobs with Manna Pro, expressed that they did not want union representation, (2) one employee told Bond that he did not want a union and Bond overheard three others saying they did not want to pay union dues for nothing, and (3) the Union struck FMA for three days in 1984 and then returned to work at terms fixed by FMA which included less pay, less paid time off, and fewer hours.[4]

---

**4.** Manna Pro contends that prior to the takeover in February, the FMA union steward was provided with union authorization cards, yet no cards were ever returned to Mike Taylor, the Union's International Representative. Manna Pro also contends that sometime in January 1990, Taylor called three future Manna Pro employees and they each told Taylor that they did not want the Union. While the record supports both of these contentions, they are irrelevant here because the record fails to establish that Manna Pro was aware of either of them at the time it refused to bargain. Therefore, Manna Pro cannot rely on these factors to support its contention that it had a good faith doubt, on

We agree with the Board that these factors combined are insufficient to support a reasonably-based, good faith doubt of majority status. There is no evidence that the FMA employees who stated that they did not want the Union were ever actually hired by Manna Pro. Additionally, although Bond overheard three employees express disenchantment with the Union, this is not the equivalent of withdrawal of support of the Union. *See e.g., Briggs Plumbingware, Inc. v. NLRB,* 877 F.2d 1282, 1288 (6th Cir.1989). Further, the ALJ was not inclined to afford much weight to Bond's affidavit, and we will not disturb his judgment. Next, the Board found that any employee sentiments attributable to the aborted 1984 strike were too remote in time to support a reasonably-based, good faith doubt in March 1990, and the record supports this finding. Finally, Markley's own words on March 8, 1990—two days after refusing to bargain—are particularly enlightening. After already refusing the Union's request to bargain, Markley stated to the employees, *"some of you have indicated you [don't want a union].* *If* a majority of you feel that way, *then* the [Union's] claim that they represent a majority is not correct...." (emphasis added). These statements are evidence that Manna Pro did not, in fact believe, *at the time* Manna Pro refused to bargain with the Union, that the Union lacked majority support.

## IV.

■ Manna Pro's last contention is that the Board erred as a matter of law in refusing to consider evidence relating to Manna Pro's "in fact" defense to the charge that it unlawfully refused to bargain with the Union in violation of § 158(a)(1). Manna Pro argues that the ALJ, in refusing to allow four April 26, 1990 employee petitions, signed by a majority of Manna Pro's employees indicating that they did not wish to be represented by the Union, as well as testimony from twenty-two current employees, whom, the offer of proof submitted, would testify that they March 6, 1990, that the Union had majority

did not support the Union on March 6, 1990, effectively precluded Manna Pro from putting on its "in fact" defense. Manna Pro disputes the ALJ's finding, upheld by the Board, that the evidence was tainted, and further argues that whether such evidence was tainted goes to the weight, not the admissability of the evidence. We review the ALJ's exclusion of the evidence for an abuse of discretion. *See Walter N. Yoder & Sons v. NLRB,* 754 F.2d 531, 534 (4th Cir.1985); *Marathon Le-Tourneau Co., Longview Div. v. NLRB,* 699 F.2d 248, 254 (5th Cir.1983).

■ In addition to the above-discussed reasonably-based, good faith defense, a successor employer can also refuse to recognize the predecessor's union, if at the time of its refusal to bargain, the Union did not *in fact* enjoy majority support. *Curtin Matheson Scientific, Inc.,* 494 U.S. at 778, 110 S.Ct. at 1544. In order to show an actual lack of majority support, the employer must make a numerical showing that a majority of employees in fact opposed the union at the time of the refusal to bargain. *Id.* at 788 n. 8, 110 S.Ct. at 1550.

■ The ALJ first noted that the April 26, 1990 petitions would not be reliable on the issue of how the employees felt about the Union on March 6, 1990—the time Manna Pro initially refused to bargain. Furthermore, given Manna Pro's unfair labor practices from February through April, the ALJ found the petitions could not reliably predict where the employees' sympathies might lie in the absence of Manna Pro's unlawful conduct. The Board has consistently held that unfair labor practices which are of a character as to cause employee disaffection with the union, or at least have a meaningful impact in bringing about that disaffection, will taint a subsequent employee antiunion petition. *See Columbia Portland Cement Co.,* 303 N.L.R.B. No. 133 (July 25, 1991), *enf'd* 979 F.2d 460 (6th Cir.1992); *Powell Elec. Mfg. Co.,* 287 N.L.R.B. No. 100 (Dec. 30, 1987), *enf'd as modified* 906 F.2d 1007 (5th Cir. 1990); *Master Slack Corp.,* 271 N.L.R.B. support.

78 (1984). The record reflects that Manna Pro made it clear to prospective employees that it intended to operate nonunion. The record also reflects that Manna Pro announced to current employees that it had already refused to bargain with the Union, then directly solicited the employees to sign antiunion petitions. The ALJ's inference that these unfair labor practices by Manna Pro likely affected employees' attitudes towards the Union is supported by the record. Therefore, we cannot say that the ALJ abused his discretion in excluding the antiunion petitions. *Accord Sullivan Indus. v. NLRB*, 957 F.2d 890, 902 (D.C.Cir. 1992) (citing with approval the Board's conclusion in *Manna Pro Partners*, 304 N.L.R.B. No. 104 (Aug. 27, 1991)—the case below—that the employee antiunion petitions were tainted).

Likewise we hold that the ALJ did not abuse his discretion in excluding the testimony of the twenty-two employees. The unfair labor practices that tainted the petitions would also have tainted any employee testimony at the hearing in front of the ALJ. We agree with the D.C. Circuit's analysis that Manna Pro's refusal to bargain with the Union, together with Manna Pro's other unfair labor practices "may well have affected the employees' morale, organizational activities, and union membership." *Id.* Further, although there is no direct evidence that Manna Pro's unlawful conduct actually caused the employees' disaffection, direct evidence is not required. *See Columbia Portland Cement Co. v. NLRB*, 979 F.2d 460, 465 (6th Cir.1992) (citations omitted). Rather, the unlawful conduct need only have a tendency to undermine the union. *Gissel Packing Co.*, 395 U.S. at 614, 89 S.Ct. at 1940; *Columbia Portland Cement Co.*, 979 F.2d at 465. Substantial evidence on the record as a whole, together with the Board's reasonable inferences from the facts, support the Board's conclusion that Manna Pro's unlawful activity tended to undermine employee support of the Union.

We also note that although Manna Pro is correct that whether the employees' testimony would be tainted nor-

mally would go to weight rather than admissability, Manna Pro has cited us no authority that would preclude the ALJ from exercising his discretion in excluding the evidence. Unfair labor practice hearings are subject, so far as practicable, to the Federal Rules of Evidence. 29 U.S.C. § 160(b). Under the Federal Rules, all relevant evidence is admissable; however, under Rule 403, a judge may exclude relevant evidence if its probative value is substantially outweighed by concerns for waste of time. The transcript reflects that the ALJ excluded the testimony evidence because he considered the tainted testimony to be so unlikely probative and so unlikely to be outcome-effecting, that to allow the evidence would be a waste of time. R. at 28–29, 40–41. We cannot say that this was an abuse of discretion.

Considering all the evidence that was admitted, we uphold the Board's determination that Manna Pro failed to show that the Union in fact lacked majority support. Accordingly, we uphold the Board's finding that Manna Pro unlawfully refused to bargain with the Union in violation of § 158(a)(1) and (5).

Manna Pro's petition for review of the order by the National Labor Relations Board is DENIED. General Counsel's application for enforcement is GRANTED.