**DESTILERIA SERRALES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–1659.

United States Court of Appeals, First Circuit.

Argued March 1, 1989.

Decided Aug. 16, 1989.

Francisco Chevere with whom Donald M. Hall and McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, Hato Rey, P.R., were on brief, for petitioner.

William R. Stewart, Deputy Asst. Gen. Counsel, with whom Rosemary M. Collyer, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, Washington, D.C., were on brief, for respondent.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

In this appeal, Destileria Serrales, Inc. ("the Company" or "petitioner") petitions this court to review and set aside an order of the National Labor Relations Board ("NLRB" or "the Board") finding that the Company committed an unfair labor practice under sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5), (1). The Board cross-appeals for enforcement of its order. For the reasons stated below, the Board's cease and desist order should be enforced.

## I. *Background*

Puerto Rican Distilleries ("P.R.D.") operated a distilling, processing, and bottling facility in Camuy, Puerto Rico. Employees at the Camuy facility were represented by

* Of the District of Massachusetts, sitting by desig-    nation.

the S.I.U. de Puerto Rico, Caribe and Latin–America ("S.I.U." or "the Union") and a collective bargaining agreement was in force on October 18, 1985, when P.R.D. suddenly and without notice ceased operations and discharged all the employees. When Union president Conrado Hernandez learned that P.R.D. had been acquired by petitioner, the admitted successor corporation, he contacted the Company vice president and asked that the Company recognize the Union. Counsel for the Company then contacted counsel for the Union and explained that the Company had not yet decided what operations it would resume at the Camuy facility, and whether it would rehire the discharged P.R.D. employees. On November 11, 1985 the Company resumed production at Camuy and hired 17 of the discharged employees. Meanwhile, on November 4, 1985, the Company vice president authorized its counsel to meet with the S.I.U. and commence bargaining. The two attorneys met for their first bargaining session on November 8.

Throughout November, December, and the first half of January, the Company's attorney, the Union's attorney, and Union president Hernandez repeatedly conferred concerning the collective bargaining agreement. By January 20, 1986 the two attorneys reached tentative agreement on virtually every matter contained in the contract and scheduled a meeting for January 22, when the various parties would meet with two employee representatives from Camuy and finalize the agreement.

Hernandez visited the Camuy facility on January 21 in order to invite two employee representatives to the meeting the following day. At this point, 55 employees were working at the facility. Although Hernandez apparently communicated the Company's promise to pay for the time off, as the meeting was to take place some distance away in San Juan, he also confirmed that the Company had not yet expressly recognized the Union. No employees volunteered to attend the meeting and the Union subsequently requested that it be cancelled. The Company immediately announced that the employees' refusal to attend the bargaining session demonstrated

their dissatisfaction with the Union, and that the Company had formed a good faith doubt that S.I.U. had majority support among the Camuy employees. On January 24, 1986, the Company offered contracts directly to the employees and unilaterally instituted other terms and conditions of employment.

The administrative law judge ("ALJ") heard testimony from four employees, all called by the Company, concerning their own and other employees' dissatisfaction with the Union. Their combined testimony conclusively identified, by name, only eight employees who did not want Union representation at the Camuy plant. One of the NLRB General Counsel's witnesses, an employee delegate to the Union, testified that he believed opinion about the Union fell into three categories: twenty to twenty-five employees told him they were not interested in representation, eight to ten said they were indifferent, and fifteen to twenty refused, in the ALJ's words, "any comment that might affect their jobs." Appendix at 17.

The ALJ concluded that the Company had, by presenting specific proposals to and bargaining with the Union, granted de facto recognition to the Union. Given this presumption of representation, therefore, the question then became whether the Company's withdrawal of recognition in January was proper. On appeal, we are asked to determine whether the ALJ placed too heavy a burden on the Company when she found that their withdrawal of recognition was not based on sufficient objective criteria.

## II. *Withdrawal of Recognition*

In order to overcome a presumption of majority support, as here, "the employer has the burden of demonstrating either (1) that the union in fact no longer has a majority; or, more likely (2) 'a reasonable good faith doubt of the union's majority.'" *Soule Glass & Glazing Co. v. N.L.R.B.*, 652 F.2d 1055, 1109–10 (1st Cir. 1981) (citations omitted). This good faith doubt "must be 'reasonably grounded' and 'based on objective considerations' to justi-

fy refusal to bargain with the union." *Id.* at 1110 (citations omitted). An employer seeking to establish these objective considerations cannot rely on any single factor, but rather, "[g]enerally, several indicia of loss of majority support are required." *Id.*

■ After determining that the Company did not withdraw recognition from the Union in bad faith, the ALJ turned to the question of whether the Company "presented sufficient objective evidence that a majority of the 55 employees in the unit no longer desired Union representation." The ALJ articulated the Company's burden as follows:

> In rebutting the union's presumption of continued majority support, an employer bears a heavy burden of presenting "clear, cogent and convincing evidence" which indicates that a union's support has declined to a minority ... The Respondent has failed to meet its considerable burden.

Appendix at 22. On review, the NLRB stated that: "after carefully reviewing the record ourselves, we have also reached the conclusion that the Respondent has failed to meet either prong of the test for the lawful withdrawal of recognition." Appendix at 3; 289 N.L.R.B. No. 10 at 2; 1988 NLRB LEXIS 260.

Appellant argues that when an employer asserts a good-faith doubt withdrawal of recognition, it must present only a "reasonable basis" for its action. Once the ALJ determined that the Company did not refuse to bargain in bad faith, petitioner asserts, it is contrary to NLRB precedent to impose on the employer a "heavy" or "considerable" burden to present "clear, cogent and convincing evidence" that the Union has lost majority support. Instead, petitioner asserts, the test should be whether, based on the totality of the circumstances, its withdrawal of recognition was reasonable.

Petitioner's position is not supported by the controlling case law. As this court explained in *Soule Glass & Glazing Co.*, *supra*, "[t]he employer's doubt must be 'reasonably grounded' *and* 'based on objective considerations' to justify refusal to bargain with the union." 652 F.2d at 1110 (citations omitted; emphasis added). In other words, the employer's decision must be both reasonable *and* supported by sufficient objective criteria. Although neither ALJ nor the Board used this precise language, both applied the proper standard. The ALJ carefully reviewed all of the evidence and concluded:

> Respondent has not adduced concrete and unequivocal expressions of antiunion sentiment from a sufficient number of employees or managerial personnel to support a reasonable doubt that the union no longer enjoyed majority support on or about 22 January 1986.

Appendix at 24. The Board carefully considered the Company's arguments and concluded that the ALJ "did not, in her analysis, improperly require the Respondent to prove actual loss of majority in order to establish good faith doubt," but rather, she "directly addressed the second prong of the test"—that is, whether the Company's "refusal to bargain was grounded on a good faith doubt based on objective factors that the Union continued to command majority support." *Id.* at 3; 289 N.L.R.B. No. 10 at 2 (quoting *Harley–Davidson Transp. Co.*, 273 N.L.R.B. 1531 (1985)). On the basis of this test, the ALJ properly determined that the Company had not shown sufficient objective criteria to justify its withdrawal of recognition from the Union.

### III. *Conclusion*

■ When faced with a petition to set aside an order of the NLRB, our role is necessarily limited:

> The court must enforce the Board's order if the Board correctly applied the law and if the Board's findings of fact are supported by substantial evidence on the record viewed as a whole ... The court may not substitute its judgment for that of the Board when the choice is "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*," and must defer to the Board's inferences in the Board's areas of specialized experience and expertise.

*Penntech Papers, Inc. v. N.L.R.B.*, 706 F.2d 18, 22–23 (1st Cir.) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951) (citations omitted)), *cert. denied*, 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983). The ALJ found that "[t]he record leaves little doubt ... that [after P.R.D.'s unexpected closure] the employees were fearful about the permanence of their employment ... It is in this context that the employees' ambivalence must be examined." Appendix at 20. The Board carefully reviewed the record and adopted the ALJ's findings and conclusion. Because the Board correctly applied the law and its findings of fact are supported by substantial evidence in the record, the Company's petition for review is denied and the Board's order is hereby

*Enforced.*