**BOLTON–EMERSON, INC., Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 89–1605.

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1989.

Decided March 26, 1990.

Scott Faust, with whom Joseph E. O'Leary, Gregory B. Reilly, III and Choate, Hall & Stewart, Boston, Mass., were on brief, for petitioner.

Margaret G. Bezou, Deputy Associate General Counsel, with whom Peter Winkler, Supervisory Atty., Washington, D.C., were on brief, for respondent.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and COFFIN, Senior Circuit Judge.

BOWNES, Circuit Judge.

Bolton–Emerson, Inc. (the company) petitions us to set aside an order of the National Labor Relations Board (NLRB or Board), which found that it had violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) and (a)(5). The NLRB cross-appeals for enforcement of its order.

## I. BACKGROUND

The company manufactures and sells equipment used in the paper and plastics industries. The employees of the company had long been represented by the International Association of Machinists and Aerospace Workers, AFL–CIO, Local Lodge 1271, District Lodge 38 (the union). The company and union were parties to a labor contract that expired on March 1, 1988.

The violations grew out of negotiations for a new contract in February, 1988.[1] After three negotiating sessions with the union, the company withdrew recognition of the union and refused to bargain further. Having withdrawn recognition, the company then required, as a term of employment, that all employees sign a confidentiality/non-disclosure agreement[2] which was one of the issues being negotiated as part of the new contract.

The union filed a complaint with the NLRB claiming that the company's refusal to bargain and its unilateral change of a condition of employment (the confidentiality agreement) were unfair labor practices that violated the Act. The company responded that it had an objective good faith belief that the union no longer represented a majority of the bargaining unit so that it was justified in withdrawing recognition. The company argued further that, because its withdrawal of recognition of the union was justified, it did not violate the Act by

---

1. The details surrounding the negotiations and unfair labor practices are amply related in the order of the NLRB and the decision of the ALJ so we only outline them briefly.

2. The agreement prohibited the disclosure of information learned while employed by the company, limited future employment with the company's competitors, and in some instances assigned all right, title, and interest to inventions made during the time of employment to the company.

dealing directly with the employees. Even if it was not justified in withdrawing recognition, the company claimed, the contract discussions had reached an impasse and it was justified in implementing the terms of its final offer, which had included a confidentiality agreement.

The complaint was heard before an administrative law judge (ALJ) who ruled decisively in favor of the union and issued a cease and desist order. The ALJ held that the company had violated 29 U.S.C. § 158(a)(1) and (a)(5) by refusing to bargain with the union and by dealing directly with employees. The Board, after carefully examining the record, affirmed the ALJ's decision with a few minor corrections. 293 N.L.R.B. No. 139 (1989).

The company now turns to us with what are apparently the same arguments that the ALJ rejected. The company questions the ALJ's rulings on both the facts and the law.

## II. STANDARD OF REVIEW

"The findings of the Board with respect to questions of fact if supported by substantial evidence on the record as a whole shall be conclusive." 29 U.S.C. § 160(e). *See, e.g., Soule Glass & Glazing Co. v. NLRB,* 652 F.2d 1055, 1073 (1st Cir.1981). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Cable Vision, Inc.,* 660 F.2d 1, 3 (1st Cir.1981) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951)). This court must sustain "inferences drawn by the Board from the evidence ... or the application of a statutory standard to particular factfindings (e.g., bargaining in good faith)" if the conclusions are reasonable. *Soule Glass,* 652 F.2d at 1073. Finally, we may not substitute our judgment for that of the Board when the choice is "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo." Cable Vision,* 660 F.2d at 3 (*quoting Universal Camera,* 340 U.S. at 488, 71 S.Ct. at 464). *See also Destileria*

*Serrales, Inc. v. NLRB,* 882 F.2d 19, 21–22 (1st Cir.1989). In light of these standards, and having reviewed the record and the NLRB's order, we enforce the Board's order.

## III. WITHDRAWAL OF RECOGNITION

 Under § 8(a) of the Act, it is an unfair labor practice for an employer "(1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 157 [to organize, join unions, bargain collectively and strike]" and "(5) to refuse to bargain collectively with representatives of his employees...." 29 U.S.C. § 158(a). In furtherance of these provisions, it is generally unlawful for an employer to withdraw recognition of the union as a means of refusing to bargain. A certified union enjoys a rebuttable presumption of continuing majority support. *NLRB v. Massachusetts Mach. & Stamping Inc.,* 578 F.2d 15, 18 (1st Cir.1978). In order to overcome this presumption we have held that an employer

> has the burden of demonstrating either (1) that the union in fact no longer has a majority; or more likely (2) 'a reasonable good faith doubt of the union's majority.' This good faith doubt 'must be reasonably grounded' *and* 'based on objective considerations' to justify refusal to bargain with a union.

*Destileria Serrales,* 882 F.2d at 20–21 (*quoting Soule Glass,* 652 F.2d at 1109–10) (emphasis added). We also specifically rejected a reasonableness/totality of the circumstances test to evaluate the company's withdrawal. *Id.* The company claims that the ALJ did not correctly apply this standard because he evaluated each fact upon which the company relied individually and did not explicitly combine all of the various facts. The company's argument goes only to whether its actions were reasonably grounded. A combination of factors can create a reasonable ground for a good faith belief on behalf of the company that the union does not enjoy majority support. *Massachusetts Mach.,* 578 F.2d at 18. *See also Bellwood Gen. Hospital v. NLRB,* 627

F.2d 98, 104 (7th Cir.1980). But that is only half of the two pronged test. Even if the company's reading of the ALJ's opinion is correct, which we do not think it is, the company still has not gotten over the "objective considerations" hurdle. The ALJ carefully examined the various objective considerations that the company claimed informed its good faith doubt of majority status and held that the company did not have enough objective facts to sustain a reasonable doubt.

■ Implicitly recognizing this problem, the company attacks the ALJ's factual findings and supports its argument for reversal with facts that are the opposite of those found by the ALJ. We turn briefly to those findings.

The most significant fact the company disputes is the ALJ's failure to credit its allegation that a union negotiator stated during a bargaining session that he (and thus the union) did not represent a majority of the bargaining unit. There was conflicting testimony about exactly what, if anything, was said by the negotiator. The ALJ explicitly discredited the company's witnesses' version of the incident and found that no such statement was made. Slip op. at 10. This is only one of many places in his decision where the ALJ noted that the company's witnesses were not credible. He stated elsewhere, for example, that company witnesses testified "as if [they] had memorized an argument and [were] repeating it by rote." Slip op. at 5. The credibility of a witness is for the ALJ and NLRB to determine and will be overturned "only when the Board oversteps the bounds of reason." *NLRB v. Universal Packaging Corp.*, 361 F.2d 384, 388 (1st Cir.1966). *See also Cable Vision*, 660 F.2d at 6–7; *NLRB v. Pearl Bookbinding Co.*, 517 F.2d 1108, 1112 (1st Cir.1975). The Board did not "overstep the bounds of reason" here.

The ALJ also found that the other evidence the company offered did not amount to objective facts upon which to base a good faith belief that the union did not have majority support. None of the company's arguments about the factual findings is worthy of discussion, as they were all dealt with amply by the ALJ. Those findings are supported by the record as a whole.

## IV. BAD FAITH

■ In addition to his credibility findings, the ALJ ruled that the company lacked good faith throughout its negotiations with the union prior to its refusal to bargain.[3] In particular, the ALJ found that whatever doubts the company had about the union's majority status existed prior to the negotiations. Despite those doubts, the company entered into negotiations hoping to get a contract to its liking. The testimony of the company's chief negotiator is explicit on this point:

Judge Maloney: ... did you believe at that time [the first day of negotiations] the union represented the majority of the people in the bargaining unit?

Crowe (company negotiator): I think we had a good faith doubt that they didn't.

Judge Maloney: You didn't think they did at that time?

Crowe: Right

Judge Maloney: But you continued to negotiate anyhow, is that right?

Crowe: That's correct

Testimony of Adrian Crowe, Tr. at 148–49. In addition, Crowe conceded that if the company had been able to reach a suitable agreement, it probably would have signed the new contract even though it thought that the union did not have majority representation. This is sufficient grounds to make a determination of bad faith. Moreover, as a reasonable inference from the facts, it must be upheld by this court. *Soule Glass*, 652 F.2d at 1073. A finding of bad faith is fatal to the company's appeal because, as the company acknowledges, justified withdrawal requires good

---

**3.** Under the Act, parties have an obligation "to confer in good faith with respect to wages, hours and other terms and conditions of employment." 29 U.S.C. § 158(d). Failure to do so is a violation of § 158(a)(5). *See, e.g., Huck Mfg. Co. v. NLRB*, 693 F.2d 1176, 1187 (5th Cir.1982).

faith and a context free of unfair labor practices. *See, e.g., Destileria Serrales,* 882 F.2d at 20–21; *Abbey Medical/Abbey Rents, Inc.,* 264 N.L.R.B. 969, 969 (1982), *enf'd,* 709 F.2d 1514 (9th Cir.1983).

The company contests the Board's finding of bad faith by arguing that Board rules required it to bargain with the union over a new contract until the expiration of the existing contract. The company claims it was forced to bargain because the "window period" for decertification had passed.[4]

We decline to determine whether the "window periods" are applicable to bargaining about future contracts. Even if the company's argument were correct about the "window period," we do not believe that Bolton–Emerson could have enjoyed the benefit of the rule. The ALJ found that all of the information that led to the company's doubts about the majority status of the union existed prior to the end of the "window period." The company offers no explanation for its failure to act on its doubts prior to expiration of the "window period." Its failure to use the "window period" when it was available cannot be an excuse for (and in fact only emphasizes) its later bad faith after the expiration of the "window period." To allow the company to use the "window period" as an excuse for bad faith bargaining would defeat any purpose that the "window period" might serve.

## V. IMPASSE

■ The company also argues that even if its refusal to bargain was an unfair labor practice, it did not unilaterally change a condition of employment because the negotiations with the union had reached an impasse, and the company was thus justified in requiring a confidentiality agreement because it had been part of its final offer. The union argued, and the ALJ agreed, that negotiations were not at an impasse when the company withdrew recognition.

An employer violates § 8(a)(1) and (a)(5) of the Act by unilaterally changing a condi-

tion of employment that is the subject of negotiations. *NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). "The principal exception to this rule occurs when the negotiations reach an impasse: when impasse occurs, the employer is free to implement changes in employment terms unilaterally so long as the changes have been previously offered to the union during bargaining." *Huck Manufacturing v. NLRB,* 693 F.2d 1176, 1186 (5th Cir.1982).

Impasse occurs when, after good faith bargaining, the parties are deadlocked so that any further bargaining would be futile. *Gulf States Mfg., Inc. v. NLRB,* 704 F.2d 1390, 1398 (5th Cir.1983). There is a strong requirement that impasse be clear before any unilateral changes are made in order to insure the integrity of the bargaining process. *Carpenter Sprinkler Corp. v. NLRB,* 605 F.2d 60, 65 (2d Cir.1979). In addition, the particular facts and complexities of the bargaining process are "particularly amenable to the expertise of the Board as factfinder." *Saunders House v. NLRB,* 719 F.2d 683, 688 (3rd Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 554 (1984) (*quoting Huck Manufacturing,* 693 F.2d at 1186). In fact "few issues are less suited to appellate judicial appraisal than evaluation of bargaining processes or better suited to the expert experience of a Board [that] deals constantly with such problems." *Saunders House,* 719 F.2d at 688 (citations omitted).

The ALJ found that the parties had not yet reached an impasse because, among other factors, the parties were making progress in the negotiations, had scheduled an additional negotiating session and neither had yet made a "final" offer. The findings of fact of the ALJ were supported by substantial evidence; the inferences drawn from those facts were reasonable. No impasse existed at the time of the company's withdrawal.

---

**4.** Under Board rules a company can only decertify a union in the thirty days prior to sixty days before the expiration of the contract or after the expiration of the contract. *Abbey Medical/Abbey Rents, Inc.,* 264 N.L.R.B. 969 (1982), *enf'd,* 709 F.2d 1514 (9th Cir.1983).

Moreover, as both parties recognize, good faith in bargaining is a requirement for any party alleging that the negotiations reached an impasse. As the record shows, the company did not enter into these negotiations with good faith. Even if there were sufficient facts to make out a case of impasse, a company may not rely on impasse when there has been bad faith negotiating. *Saunders House,* 719 F.2d at 687; *United Packinghouse, Food & Allied Workers v. NLRB,* 416 F.2d 1126, 1131 (D.C.Cir.); *cert. denied,* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969).

For the reasons stated the decision of the NLRB shall be

ENFORCED.