October 21, 1994
[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 90-2047

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

HOSPITAL SAN FRANCISCO, INC.,

Respondent.

ON MOTION TO WITHDRAW RECOGNITION OF UNION

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

William Wachter, Assistant General Counsel, and Dona A. Nutini,

Trial Attorney, on memorandum for petitioner.
Tristan Reyes-Gilestra and Fiddler, Gonzalez & Rodriguez on

memorandum for respondent.

Per Curiam. Respondent Hospital San Francisco, Inc.,

the operator of a hospital in Rio Piedras, Puerto Rico, seeks

permission to withdraw recognition from the Unidad Laboral de

Enfermeras(os) y Empleados de la Salud--the union

representing a unit of registered nurses at the hospital.

Based on the undisputed evidence, the motion is denied for

the following reasons.1

I.

A brief recounting of respondent's bargaining history

with the union is necessary to place the instant motion in

context. That history includes, among other proceedings, two

decisions by the National Labor Relations Board finding that

respondent had committed unfair labor practices, and a

decision by this court adjudicating it in contempt. The

background is as follows. Following respondent's acquisition

of the hospital in December 1987, the union sought

recognition by the new owner. Although the union had been

representing the nurses for some ten years up to that point,

respondent refused, claiming that it was not a successor

employer and that the nurses were probationary employees. On

December 13, 1988, an ALJ rejected these allegations and

ordered respondent to bargain with the union; the Board

adopted this order three months later. See 293 NLRB 171

1. Neither side has requested reference to a special master,
and we agree that disposition of the matter can be reached on
the basis of the papers presented.

("Hospital I"). Respondent recognized and commenced

bargaining with the union in the wake of the ALJ's decision.

Such rapprochement, however, was short-lived. In August

1989, respondent withdrew recognition from the union and

filed a decertification petition, claiming that the union

lacked majority support among the nurses. It subsequently

made unilateral changes in working conditions and declined to

furnish the union with requested information. The union

again filed charges, and an ALJ again found that respondent

had committed unfair labor practices. This decision, dated

December 30, 1991, was adopted by the Board in April 1992.

See 307 NLRB 84 ("Hospital II"). Mincing no words, the ALJ

found that respondent "never had an intention to reach an

agreement with the Union," and that its "withdrawal of

recognition and the filing of the RN petition were pretexts

and shams, the real purpose for which was the delaying of

collective bargaining and ultimately the ousting of the Union

from the Respondent's premises." 307 NLRB at 87. The ALJ

similarly concluded that respondent's questioning of the

union's majority status was "spurious." Id.. Respondent

never sought review of Hospital II in this court.2

In the meantime, prompted by this second round of

charges, the Board applied for summary enforcement of its

2. Respondent's decertification petition, meanwhile, was
dismissed by the Region because of the pendency of the unfair
labor practice charges.

-3-

order in Hospital I. In February 1991, over respondent's

objection, this court enforced the Board's order on the

ground that there was "no reasonable expectation" that the

wrong would not be repeated. We subsequently noted, in an

order denying reconsideration, that the record contained

"sufficient intimations ... of continued recalcitrance by

respondent concerning its duty to bargain" so as to warrant

enforcement of the order.

In July 1992, the Board filed a petition for

adjudication in civil contempt, alleging that respondent had

violated the judgment by unilaterally implementing a change

in work schedule and by dealing directly with employees in

connection therewith. In a decision dated March 30, 1993, we

found respondent in contempt. While acknowledging that its

conduct there was "less than flagrant in nature," we

determined that a contempt adjudication was warranted in

light of the hospital's "history of intransigence toward the

union." The accompanying purgation order directed

respondent, inter alia, to recognize and bargain in good

faith with the union. It also provided:

The Hospital shall not be heard to contend that the
Union lacks the support of a majority of the
bargaining unit at any time within one year of the
date of this adjudication. Thereafter, the
Hospital shall not withdraw recognition from the
Union without the prior approval of this Court.

Fifteen months later, respondent filed the instant request

for approval to withdraw recognition--asserting once again

-4-

that the union's majority support was subject to reasonable

question. In the alternative, based on the same allegation,

it asks that an election be ordered. The Board has submitted

a memorandum opposing both requests.

II.

The governing standards are not in dispute.3 In order

to overcome the rebuttable presumption of continuing majority

status, respondent must demonstrate "either (1) the union in

fact no longer enjoy[s] majority support, or (2) the employer

ha[s] a reasonable 'good faith' doubt, based on objective

considerations, of the union's majority support." NLRB v.

LaVerdiere's Enterprises, 933 F.2d 1045, 1051-52 (1st Cir.

1991); accord, e.g., NLRB v. Curtin Matheson Scientific,

Inc., 494 U.S. 775, 778 (1990); Bolton-Emerson, Inc. v. NLRB,

899 F.2d 104, 106 (1st Cir. 1990). An attempt to withdraw

recognition based on such a good faith doubt "must be both

reasonable and supported by sufficient objective criteria."

Destileria Serrales, Inc. v. NLRB, 882 F.2d 19, 21 (1st Cir.

1989) (emphasis in original); accord, e.g., Soule Glass &

Glazing Co. v. NLRB, 652 F.2d 1055, 1110 (1st Cir. 1991).

In support of its request, respondent cites a panoply of

factors that are said to demonstrate both employee

3. While the cited standards derive from cases involving
unfair labor practice proceedings, both parties agree that
they are equally applicable to the instant case
notwithstanding its different procedural posture.

-5-

repudiation of the union and inactivity on the union's part.

These can be summarized as follows: (1) employee expressions

of discontent with the union; (2) the infrequency of, and

poor attendance at, union meetings; (3) the nurses' failure

to pay union dues; (4) the filing by an employee of a

decertification petition in March 1992; (5) a letter from the

union president decrying the lack of employee support; (6)

the union's failure to file grievances; (7) its alleged

failure to appoint a shop steward; (8) the absence of

employees on the union bargaining committee; (9) the union's

overall inactivity; and (10) the high turnover in employees

since 1987.

Before addressing these various factors, we take note of

three general considerations militating against allowance of

the instant motion. First, little of respondent's supporting

evidence is of recent vintage: of the five sworn statements

attached to the motion, three were prepared in 1989 and a

fourth in 1990.4 This is significant. See, e.g., Manna Pro

Partners, L.P. v. NLRB, 986 F.2d 1346, 1353 (10th Cir. 1993)

(employee sentiments voiced in 1984 "were too remote in time"

to support a reasonable doubt of majority status in 1990).

Second, the Board considered much of such evidence in

Hospital II in the course of conducting an inquiry identical

4. Indeed, the three 1989 affidavits were drafted in support
of respondent's August 1989 decertification petition.

-6-

to that involved here--i.e., in finding that respondent's

1989 challenge to the union's majority status was unfounded.

This, too, is significant. Cf. NLRB v. Donna-Lee Sportswear

Co., 836 F.2d 31, 33-34 (1st Cir. 1987) (discussing

principles of issue preclusion). Finally, as noted,

respondent was engaged in unfair labor practices throughout

much of the relevant period. Indeed, the ALJ in Hospital II

specifically found that "union defection [was] easily traced

to the Respondent's commission of unfair practices." 307

NLRB at 87. An employer, of course, cannot assert a good-

faith doubt as to a union's majority support where unfair

labor practices have caused employee defections. See, e.g.,

Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 687 (1944).

Respondent thus comes close to having three strikes

against it before even stepping to the plate. The specific

factors it cites, moreover, do little to advance its cause.

Indeed, many require little discussion. The union

president's letter, for example, is irrelevant; it is

apparent from the context that he was there lamenting the

nurses' reluctance to testify in the agency hearings--a

reluctance that is explicable in light of the atmosphere of

"fear" described by the ALJ. See 307 NLRB at 87. The

reference to the union's failure to file grievances is

disingenuous; as the ALJ noted, respondent had taken the

position that it would not discuss grievances until a

-7-

bargaining agreement was reached. Id. at 86 & nn. 8-9. The

allegation of general union inactivity is frivolous; it

suffices to note in this regard that respondent has twice

been brought up on charges by the union.

The alleged expressions of employee disaffection with

the union are worthy of little weight. They are all at least

five years old, they were deemed unpersuasive by the ALJ in

Hospital II, see id. at 86, and they fall well short of

reflecting the views of "at least 50 percent" of the nursing

workforce, LaVerdiere's Enterprises, 933 F.2d at 1053.5 In

turn, the alleged absence of a shop steward, the absence of

employees on the bargaining committee, and the infrequency of

(and alleged poor attendance at) union meetings were each

considered by the ALJ.6 Moreover, the union now explains

that a steward was in place for part of 1991 and 1992, that

it purposefully excluded employees from the bargaining

committee to prevent reprisals, and that it has communicated

5. The June 1994 affidavit of Rivera Quintero--the only
current affidavit provided--states generally that the nurses
"totally disregard" the union, but recounts no individual
expressions of anti-union sentiment. Indeed, the lack of
updated evidence in this regard is telling, inasmuch as
"[e]xpression of employee sentiment against a union is the
most persuasive evidence supporting an employer's good faith
doubt of the union's lack of majority status." NLRB v.

Albany Steel, Inc., 17 F.3d 564, 570 (2d Cir. 1994).

6. The Rivera Quintero affidavit refers to a more recent
meeting, the date of which is unspecified, which is alleged
to have gone entirely unattended. The lack of supporting
detail, however, leaves it unclear whether such a meeting was
even held.

-8-

with its members through mailings and leaflets, rather than

through meetings at the hospital, for the same reason.

Respondent has offered no rebuttal of these explanations.

The remaining three factors are likewise of little

avail. The employee's decertification petition, we are told,

was dismissed by the Region because of the pendency of unfair

labor practice proceedings. In Asseo v. Centro Medico del

Turabo, 900 F.2d 445 (1st Cir. 1990), we held in similar

circumstances that such a petition "do[es] not constitute

sufficient objective evidence to deny recognition to the

certified bargaining agent." Id. at 453. Moreover, the

petition there had been signed by 35 of the 79 employees;

here, while the petition contained a checked-off box

indicating it was supported by 30% or more of the nurses, it

was only signed by a single employee.

Regarding the issue of union dues, respondent points out

that no nurse has executed an authorization to have dues

deducted from his or her paycheck. Yet this evidence

manifests no recent diminution in employee support for the

union. Compare, e.g., NLRB v. Albany Steel, Inc., 17 F.3d

564, 570 (2d Cir. 1994) ("where the union has sought

financial support from the members and received only one

reply which was resoundingly negative, it is not unreasonable

for an employer to question the union's majority status").

Indeed, respondent acknowledges that it "has never deducted

-9-

Union dues from the graduate nurses," Vazquez Affid., Exh.

10A, 8 (emphasis added)--quite possibly for the reason that

an employer has no duty to do so in the absence of a

collective bargaining agreement. See, e.g., Robbins Door &

Sash Co., 260 NLRB 659 (1982).7

Finally, as to the issue of employee turnover,8

whatever weight this factor might ordinarily possess is

diminished where, as here, the employer has unlawfully

avoided its bargaining obligation during most of the relevant

period. See, e.g., Fall River Dyeing & Finishing Corp. v.

NLRB, 482 U.S. 27, 51 n.18 (1987); LaVerdiere's Enterprises,

933 F.2d at 1055 ("If delays are occasioned by an obstinate

employer, he may not benefit from his own wrong.") (quoting

Texas Petrochemicals Corp. v. NLRB, 923 F.2d 398, 404 (5th

Cir. 1991)).

III.

For these reasons, we perceive no basis for the

withdrawal of recognition from the union. We are likewise

unpersuaded that an election among unit employees is

warranted. The two cases on which respondent relies in this

7. The union, in any event, now explains that its practice
is to collect dues only after a bargaining agreement has been
signed. Respondent has offered no response to this
assertion.

8. Respondent states that, of the 76 nurses working at the
hospital in June 1994, only eight were so employed when it
acquired the hospital back in December 1987.

-10-

regard are plainly distinguishable. In LaVerdiere's

Enterprises, for example, we noted that "there existed a

clear showing of substantial employee dissatisfaction [with

the union] unprovoked by the employer before the employer's

less-than-egregious misconduct." 933 F.2d at 1055 (emphasis

in original). On all three counts--i.e., the extent of

employee discontent; the lack of employer contribution

thereto; the degree of employer misconduct--the instant case

differs. Similarly, in Albany Steel, various factors were

involved of a kind, or to a degree, not present in the

instant case--e.g., the absence of anti-union animus on the

employer's part; the employees' repudiation of an explicit

union request for financial support; the union's recent

failure to file any grievances, after having regularly done

so in the past; and timely expressions of employee

disaffection. See 17 F.3d at 569-71.

IV.

Nearly seven years after gaining ownership of the

hospital, respondent has yet to reach a collective bargaining

agreement with its registered nursing staff. As has now been

explicated on several occasions, both by this court and by

the Board, this state of affairs is principally attributable

to respondent's intransigence. Rather than file baseless

motions premised on stale evidence and regurgitated issues,

-11-

respondent would be better served, we suggest, by attending

to its bargaining obligations in a forthright fashion.

The motion requesting approval to withdraw recognition

of the union is denied.

-12-