37 F.3d 1484
 147 L.R.R.M. (BNA) 2662
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
HOSPITAL SAN FRANCISCO, INC., Respondent.
 No. 90-2047
 United States Court of Appeals,
First Circuit.
 Oct. 21, 1994
 
 ON MOTION TO WITHDRAW RECOGNITION OF UNION
 William Wachter, Assistant General Counsel, and Dona A. Nutini, Trial Attorney, on memorandum for petitioner.
 Tristan Reyes-Gilestra and Fiddler, Gonzalez & Rodriguez on memorandum for respondent.
 MOTION DENIED.
 Before Selya, Circuit Judge, Campbell, Senior Circuit Judge, and Boudin, Circuit Judge.
 Per Curiam.
 
 
 1
 Respondent Hospital San Francisco, Inc., the operator of a hospital in Rio Piedras, Puerto Rico, seeks permission to withdraw recognition from the Unidad Laboral de Enfermeras(os) y Empleados de la Salud-the union representing a unit of registered nurses at the hospital. Based on the undisputed evidence, the motion is denied for the following reasons.[1]
 
 I.
 
 2
 A brief recounting of respondent's bargaining history with the union is necessary to place the instant motion in context. That history includes, among other proceedings, two decisions by the National Labor Relations Board finding that respondent had committed unfair labor practices, and a decision by this court adjudicating it in contempt. The background is as follows. Following respondent's acquisition of the hospital in December 1987, the union sought recognition by the new owner. Although the union had been representing the nurses for some ten years up to that point, respondent refused, claiming that it was not a successor employer and that the nurses were probationary employees. On December 13, 1988, an ALJ rejected these allegations and ordered respondent to bargain with the union; the Board adopted this order three months later. See 293 NLRB 171 ("Hospital I "). Respondent recognized and commenced bargaining with the union in the wake of the ALJ's decision.
 
 
 3
 Such rapprochement, however, was short-lived. In August 1989, respondent withdrew recognition from the union and filed a decertification petition, claiming that the union lacked majority support among the nurses. It subsequently made unilateral changes in working conditions and declined to furnish the union with requested information. The union again filed charges, and an ALJ again found that respondent had committed unfair labor practices. This decision, dated December 30, 1991, was adopted by the Board in April 1992. See 307 NLRB 84 ("Hospital II "). Mincing no words, the ALJ found that respondent "never had an intention to reach an agreement with the Union," and that its "withdrawal of recognition and the filing of the RN petition were pretexts and shams, the real purpose for which was the delaying of collective bargaining and ultimately the ousting of the Union from the Respondent's premises." 307 NLRB at 87. The ALJ similarly concluded that respondent's questioning of the union's majority status was "spurious." Id.. Respondent never sought review of Hospital II in this court.[2]
 
 
 4
 In the meantime, prompted by this second round of charges, the Board applied for summary enforcement of its order in Hospital I. In February 1991, over respondent's objection, this court enforced the Board's order on the ground that there was "no reasonable expectation" that the wrong would not be repeated. We subsequently noted, in an order denying reconsideration, that the record contained "sufficient intimations ... of continued recalcitrance by respondent concerning its duty to bargain" so as to warrant enforcement of the order.
 
 
 5
 In July 1992, the Board filed a petition for adjudication in civil contempt, alleging that respondent had violated the judgment by unilaterally implementing a change in work schedule and by dealing directly with employees in connection therewith. In a decision dated March 30, 1993, we found respondent in contempt. While acknowledging that its conduct there was "less than flagrant in nature," we determined that a contempt adjudication was warranted in light of the hospital's "history of intransigence toward the union." The accompanying purgation order directed respondent, inter alia, to recognize and bargain in good faith with the union. It also provided:
 
 
 6
 The Hospital shall not be heard to contend that the Union lacks the support of a majority of the bargaining unit at any time within one year of the date of this adjudication. Thereafter, the Hospital shall not withdraw recognition from the Union without the prior approval of this Court.
 
 
 7
 Fifteen months later, respondent filed the instant request for approval to withdraw recognition-asserting once again that the union's majority support was subject to reasonable question. In the alternative, based on the same allegation, it asks that an election be ordered. The Board has submitted a memorandum opposing both requests.
 
 II.
 
 8
 The governing standards are not in dispute.[3] In order to overcome the rebuttable presumption of continuing majority status, respondent must demonstrate "either (1) the union in fact no longer enjoy[s] majority support, or (2) the employer ha[s] a reasonable 'good faith' doubt, based on objective considerations, of the union's majority support." NLRB v. LaVerdiere's Enterprises, 933 F.2d 1045, 1051-52 (1st Cir. 1991); accord, e.g., NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 778 (1990); Bolton-Emerson, Inc. v. NLRB, 899 F.2d 104, 106 (1st Cir. 1990). An attempt to withdraw recognition based on such a good faith doubt "must be both reasonable and supported by sufficient objective criteria." Destileria Serrales, Inc. v. NLRB, 882 F.2d 19, 21 (1st Cir. 1989) (emphasis in original); accord, e.g., Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1110 (1st Cir. 1991).
 
 
 9
 In support of its request, respondent cites a panoply of factors that are said to demonstrate both employee repudiation of the union and inactivity on the union's part. These can be summarized as follows: (1) employee expressions of discontent with the union; (2) the infrequency of, and poor attendance at, union meetings; (3) the nurses' failure to pay union dues; (4) the filing by an employee of a decertification petition in March 1992; (5) a letter from the union president decrying the lack of employee support; (6) the union's failure to file grievances; (7) its alleged failure to appoint a shop steward; (8) the absence of employees on the union bargaining committee; (9) the union's overall inactivity; and (10) the high turnover in employees since 1987.
 
 
 10
 Before addressing these various factors, we take note of three general considerations militating against allowance of the instant motion. First, little of respondent's supporting evidence is of recent vintage: of the five sworn statements attached to the motion, three were prepared in 1989 and a fourth in 1990.[4] This is significant. See, e.g., Manna Pro Partners, L.P. v. NLRB, 986 F.2d 1346, 1353 (10th Cir. 1993) (employee sentiments voiced in 1984 "were too remote in time" to support a reasonable doubt of majority status in 1990). Second, the Board considered much of such evidence in Hospital II in the course of conducting an inquiry identical to that involved here-i.e., in finding that respondent's 1989 challenge to the union's majority status was unfounded. This, too, is significant. Cf. NLRB v. Donna-Lee Sportswear Co., 836 F.2d 31, 33-34 (1st Cir. 1987) (discussing principles of issue preclusion). Finally, as noted, respondent was engaged in unfair labor practices throughout much of the relevant period. Indeed, the ALJ in Hospital II specifically found that "union defection [was] easily traced to the Respondent's commission of unfair practices." 307 NLRB at 87. An employer, of course, cannot assert a good-faith doubt as to a union's majority support where unfair labor practices have caused employee defections. See, e.g., Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 687 (1944).
 
 
 11
 Respondent thus comes close to having three strikes against it before even stepping to the plate. The specific factors it cites, moreover, do little to advance its cause. Indeed, many require little discussion. The union president's letter, for example, is irrelevant; it is apparent from the context that he was there lamenting the nurses' reluctance to testify in the agency hearings-a reluctance that is explicable in light of the atmosphere of "fear" described by the ALJ. See 307 NLRB at 87. The reference to the union's failure to file grievances is disingenuous; as the ALJ noted, respondent had taken the position that it would not discuss grievances until a bargaining agreement was reached. Id. at 86 & nn. 8-9. The allegation of general union inactivity is frivolous; it suffices to note in this regard that respondent has twice been brought up on charges by the union.
 
 
 12
 The alleged expressions of employee disaffection with the union are worthy of little weight. They are all at least five years old, they were deemed unpersuasive by the ALJ in Hospital II, see id. at 86, and they fall well short of reflecting the views of "at least 50 percent" of the nursing workforce, LaVerdiere's Enterprises, 933 F.2d at 1053.[5] In turn, the alleged absence of a shop steward, the absence of employees on the bargaining committee, and the infrequency of (and alleged poor attendance at) union meetings were each considered by the ALJ.[6] Moreover, the union now explains that a steward was in place for part of 1991 and 1992, that it purposefully excluded employees from the bargaining committee to prevent reprisals, and that it has communicated with its members through mailings and leaflets, rather than through meetings at the hospital, for the same reason. Respondent has offered no rebuttal of these explanations.
 
 
 13
 The remaining three factors are likewise of little avail. The employee's decertification petition, we are told, was dismissed by the Region because of the pendency of unfair labor practice proceedings. In Asseo v. Centro Medico del Turabo, 900 F.2d 445 (1st Cir. 1990), we held in similar circumstances that such a petition "do[es] not constitute sufficient objective evidence to deny recognition to the certified bargaining agent." Id. at 453. Moreover, the petition there had been signed by 35 of the 79 employees; here, while the petition contained a checked-off box indicating it was supported by 30% or more of the nurses, it was only signed by a single employee.
 
 
 14
 Regarding the issue of union dues, respondent points out that no nurse has executed an authorization to have dues deducted from his or her paycheck. Yet this evidence manifests no recent diminution in employee support for the union. Compare, e.g., NLRB v. Albany Steel, Inc., 17 F.3d 564, 570 (2d Cir. 1994) ("where the union has sought financial support from the members and received only one reply which was resoundingly negative, it is not unreasonable for an employer to question the union's majority status"). Indeed, respondent acknowledges that it "has never deducted Union dues from the graduate nurses," Vazquez Affid., Exh. 10A, p 8 (emphasis added)-quite possibly for the reason that an employer has no duty to do so in the absence of a collective bargaining agreement. See, e.g., Robbins Door & Sash Co., 260 NLRB 659 (1982).[7]
 
 
 15
 Finally, as to the issue of employee turnover,[8] whatever weight this factor might ordinarily possess is diminished where, as here, the employer has unlawfully avoided its bargaining obligation during most of the relevant period. See, e.g., Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 51 n.18 (1987); LaVerdiere's Enterprises, 933 F.2d at 1055 ("If delays are occasioned by an obstinate employer, he may not benefit from his own wrong.") (quoting Texas Petrochemicals Corp. v. NLRB, 923 F.2d 398, 404 (5th Cir. 1991)).
 
 III.
 
 16
 For these reasons, we perceive no basis for the withdrawal of recognition from the union. We are likewise unpersuaded that an election among unit employees is warranted. The two cases on which respondent relies in this regard are plainly distinguishable. In LaVerdiere's Enterprises, for example, we noted that "there existed a clear showing of substantial employee dissatisfaction [with the union] unprovoked by the employer before the employer's less-than-egregious misconduct." 933 F.2d at 1055 (emphasis in original). On all three counts-i.e., the extent of employee discontent; the lack of employer contribution thereto; the degree of employer misconduct-the instant case differs. Similarly, in Albany Steel, various factors were involved of a kind, or to a degree, not present in the instant case-e.g., the absence of anti-union animus on the employer's part; the employees' repudiation of an explicit union request for financial support; the union's recent failure to file any grievances, after having regularly done so in the past; and timely expressions of employee disaffection. See 17 F.3d at 569-71.
 
 IV.
 
 17
 Nearly seven years after gaining ownership of the hospital, respondent has yet to reach a collective bargaining agreement with its registered nursing staff. As has now been explicated on several occasions, both by this court and by the Board, this state of affairs is principally attributable to respondent's intransigence. Rather than file baseless motions premised on stale evidence and regurgitated issues, respondent would be better served, we suggest, by attending to its bargaining obligations in a forthright fashion.
 
 
 18
 The motion requesting approval to withdraw recognition of the union is denied.
 
 
 
 [1]
 Neither side has requested reference to a special master, and we agree that disposition of the matter can be reached on the basis of the papers presented
 
 
 [2]
 Respondent's decertification petition, meanwhile, was dismissed by the Region because of the pendency of the unfair labor practice charges
 
 
 [3]
 While the cited standards derive from cases involving unfair labor practice proceedings, both parties agree that they are equally applicable to the instant case notwithstanding its different procedural posture
 
 
 [4]
 Indeed, the three 1989 affidavits were drafted in support of respondent's August 1989 decertification petition
 
 
 [5]
 The June 1994 affidavit of Rivera Quintero-the only current affidavit provided-states generally that the nurses "totally disregard" the union, but recounts no individual expressions of anti-union sentiment. Indeed, the lack of updated evidence in this regard is telling, inasmuch as "[e]xpression of employee sentiment against a union is the most persuasive evidence supporting an employer's good faith doubt of the union's lack of majority status." NLRB v. Albany Steel, Inc., 17 F.3d 564, 570 (2d Cir. 1994)
 
 
 [6]
 The Rivera Quintero affidavit refers to a more recent meeting, the date of which is unspecified, which is alleged to have gone entirely unattended. The lack of supporting detail, however, leaves it unclear whether such a meeting was even held
 
 
 [7]
 The union, in any event, now explains that its practice is to collect dues only after a bargaining agreement has been signed. Respondent has offered no response to this assertion
 
 
 [8]
 Respondent states that, of the 76 nurses working at the hospital in June 1994, only eight were so employed when it acquired the hospital back in December 1987